(59 Misc. Rep. 1.)

GRANT et al. v. GREENE et al.

(Supreme Court, Special Term, New York County.    April, 1908.)

1. CORPORATIONS—FOREIGN CORPORATIONS—ACTIONS AGAINST.

In an action against a foreign corporation, that plaintiff is a resident of the state need not be alleged.

2. SAME—SERVICE BY PUBLICATION—NOTICE.

Where residents sue a foreign corporation, and the complaint states a cause of action against the defendant to be served, and the moving affidavit establishes ground for service of summons by publication and that the plaintiffs are residents of the state, a motion to vacate the order of publication will be denied.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§ 2624, 2625.]

3. COURTS—JURISDICTION—REALTY IN FOREIGN COUNTRY.

In an action under Code Civ. Proc. § 1780, by plaintiffs, residents of the state, in behalf of themselves and other stockholders, to compel restoration of corporate assets and payment to stockholders of their share of the profits of an Arizona corporation, plaintiffs alleged that one of the defendants, a Mexican corporation, doing business within the state, held in trust for the Arizona corporation certain mines situated in Mexico, and sought to compel the Mexican corporation, a West Virginia corporation, which was organized as a holding corporation of both of the other corporations, and an individual defendant, who was president of each of the corporations and a resident of the state, to account for the income and profits from the working of such mines. There was no allegation that the Mexican corporation improperly held the legal title to the mining property, but it was alleged that it held such title subject to a trust in favor of the Arizona corporation, against which no relief was prayed. *Held*, that the action was in the nature of an action in rem to establish a constructive trust for the benefit of the Arizona corporation, and, the parties against whom relief was sought having appeared, equity would assume jurisdiction, though title to foreign real estate was incidentally involved.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 53–59.]

4. CONSTITUTIONAL LAW—DUE PROCESS OF LAW.

Code Civ. Proc. § 438, authorizing substituted service in an action against a foreign corporation, is not a violation of Const. U. S. Amend. 14, as not due process of law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, § 929.]

5. CORPORATIONS—FOREIGN CORPORATIONS—SERVICE BY PUBLICATION.

Under Code Civ. Proc. § 438, authorizing service of summons by publication against a foreign corporation on filing of a verified complaint showing a cause of action and proof by affidavit of facts mentioned in section 438, authorizing such service on proof that plaintiff has been unable with due diligence to make personal service of summons, service of summons by publication is justified, where the foreign corporation has property in the shape of assets in the state in the hands of the other defendants; the action being quasi in rem, said foreign corporation being but nominally a party, no relief being asked against it, and it being beneficially interested in any results favorable to plaintiff, the parties against whom relief is asked being before the court, and it having power to render an enforceable judgment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§ 2624, 2625.]

Action by James A. Grant and Nettie L. Grant against William C. Greene and others. Motion to vacate order of publication denied.

See 110 N. Y. Supp. 1130; 111 N. Y. Supp. 386.

Watson & Raymond (Samuel S. Watson, Walter B. Raymond, and Chester A. Jayne, of counsel), for plaintiffs.

M. E. Harby (F. W. M. Cutcheon, M. E. Harby, and Augustine L. Humes, of counsel), appearing herein specially and not generally, to move to vacate and set aside the order for publication of summons herein against the Cobre Grande Company.

LEVENTRITT, J. The plaintiffs, suing on behalf of themselves and of all other stockholders of the Cobre Grande Copper Company similarly situated, seek to have the defendant Cananea Consolidated Copper Company, a Mexican corporation, adjudged to be the holder, in trust, for the benefit of the Cobre Grande Copper Company, an Arizona corporation, of certain mines and mining properties situated in the republic of Mexico, and to compel the Cananea Company, William C. Greene, and the Greene Consolidated Copper Company, a West Virginia corporation, to account to the Cobre Grande Copper Company and to the plaintiffs for the income and profits arising from the work, use, and occupation of such mines and mining properties. The complaint alleges, in substance, that the Greene Consolidated Copper Company was organized as a holding company of the stock of both the Cananea and Cobre Grande Companies and to take over and dispose of the ores produced by those companies. The action was commenced by the personal service of a summons within the state on the defendant Greene, individually and as president of the three corporations named. The Cananea Company appeared specially and moved to vacate the service on the ground of want of jurisdiction. The order entered on the denial of that motion was affirmed by the Court of Appeals. Grant v. Cananea Consol. Copper Co., 189 N. Y. 241, 82 N. E. 191. The Cobre Grande Company also appeared specially and made application to vacate the service upon it on the ground that at the time thereof William C. Greene was neither an officer nor a director of the company, nor authorized to accept service of process on its behalf. That motion was granted. Thereafter the plaintiffs made several unsuccessful attempts to effect personal service upon officers of the Cobre Company within the state and to discover the presence within the state of any representative of the company upon whom service could be made. They then obtained an order permitting the service of the summons by publication or, in the alternative, personally upon an officer of the company without the state. The Cobre Company, again appearing specially, now moves on the papers upon which it was granted to vacate the order of publication, alleging absence of jurisdiction as a ground of vacatur.

The action is governed by section 1780 of the Code of Civil Procedure, which provides that an action against a foreign corporation may be maintained by a resident of the state for any cause of action. The substituted service permitted by the order sought to be vacated is controlled by sections 438 and 439 of the Code. Section 438 provides

that an order directing the service of a summons without the state or by publication may be made when the defendant to·be served is a foreign corporation; and section 439 provides that the order shall be founded upon a verified complaint showing a sufficient cause of action against the defendant to be served and proof by affidavit, when the defendant is a foreign corporation, that the plaintiff has been or will be unable, with due diligence, to make personal service of the summons.

The first ground of the defendants' motion is that the failure of the plaintiffs to allege in their complaint the jurisdictional facts of their residence in this state is fatal to the order of publication, since, through the omission of the appropriate allegation, the complaint fails to show the "sufficient cause of action" which section 439 of the Code requires. The affidavit of the plaintiff Nettie L. Grant, read in support of the order, contained proof that the plaintiffs were residents of the state; but the defendant contends that such proof does not dispense with the necessity of alleging residence in the complaint.

The provisions of section 1780 are broad and admit of no qualification. The language is:

"An action against a foreign corporation may be maintained by a resident of the state, or by a domestic corporation, for any cause of action."

Before the Revised Statutes, the rule was that a foreign corporation could not be sued at law in invitum in the courts of this state. The reason for such a rule was the supposed difficulty of serving process, since it had been held that the provisions of the absent debtor act did not apply to the case of foreign corporations, and the reasoning of the court in McQueen v. Middletown Mfg. Co., 16 Johns. 5, had made it clear that in no other way than by attachment could a foreign corporation be compelled to submit to our jurisdiction. Thereupon the revisers, apparently appreciating the force of that decision, declared that the fair protection of our own citizens required that provision be made to render such corporations amenable to the laws of this state. 5 St. at Large (Edm. Ed.) p. 742, pt. 3, c. 8. Following out the spirit of this declaration, new sections were incorporated in the Revised Statutes, which were drawn along the lines of the statute law relating to absent debtors. These provisions required that suits in the Supreme Court might be commenced by attachment. 2 Rev. St. (1st Ed.) pp. 459, 461, §§ 15, 30. In 1842 (Laws 1842, p. 227, c. 197, § 5) there was provision made for the publication of a notice that an attachment had issued.

The Code of Procedure, adopted in 1848, contained no mention of the manner of commencing an action against a foreign corporation, and section 427 thereof provided, in part, that:

"An action against a corporation, created by or under the laws of any other state, government or country, may be brought in the Supreme Court, or the court of common pleas for the city and county of New York, * * * by a resident of this state, for any cause of action."

Under the Code of Procedure, the three modes of commencing actions, by capias, summons, and declaration, were abandoned, and

the present summons and complaint were substituted. First Report Com'rs, 131.

In 1849, at the same session of the Legislature at which the Code of Procedure was enacted, chapter 107 of the Laws of that year was passed, entitled "An act to extend the remedies at law against foreign insurance companies," and providing that suits might be brought in the Supreme and Superior Courts and in the Common Pleas against any foreign corporation, upon any cause of action arising in this state, by summons and complaint, "together with an attachment" as then provided by law. Laws 1849, p. 142, c. 107, § 15. This act retained the attachment provided for in the Revised Statutes as a conjoint process by which to commence an action, to be served with the summons and complaint and to be levied as prescribed; but it added a summons and complaint as necessary process and required these to be served, as provided in sections 134 and 135 of the Code, either by delivery of a copy to the president or other named officer, or, where the person to be served could not be found within the state and had property therein, by publication.

The singular title of the act of 1849 led to some confusion (Burns v. Provincial Ins. Co., 35 Barb. 525; Jones v. Norwich Trans. Co., 50 Barb. 194), and the courts were perplexed in consequence of the almost simultaneous passage of that act and section 427 of the Code of Procedure. The opinion prevailed, however, that both remained in force, and, accoringly, the commissioners to revise the statutes framed the remodeling of both statutes upon that theory and substituted section 1780 of the present Code for both section 427 of the former Code and section 15 of the act of 1849. Throop's Code, note to section 1780. I have given this history to show that the provisions of the present Code are to be taken at their full value, unrestricted by constructive qualification.

Under section 135 of the original Code, it was provided that, where the defendant was a foreign corporation, and the person or persons on whom service was to be made could not after due diligence be found within the state, and that fact was made to appear by affidavit, and it appeared that a cause of action existed against the defendant to be served, or that he was a necessary or proper party to an action relating to real property in this state, an order might issue that such service be made by publication of the summons. The present Code substantially re-enacted the provisions of section 135. By section 439 the proof required to be furnished is: (1) A verified complaint showing a cause of action against the defendant to be served; (2) proof by affidavit of the facts mentioned in section 438, according to the ground on which the order is sought; and (3) proof that the plaintiff has been or will be unable, with due diligence, to make personal service of the summons.

It will be seen, from the foregoing analysis, that there is no statutory provision requiring the allegation of residence. An action may be maintained by a resident on any cause of action (Code, § 1780), and section 439 of the Code calls for a complaint which states a cause of action. The jurisdictional proof necessary may be supplied by affidavit. The allegation of residence bears no relation to

the cause of action pleaded, and the complaint is not defective in failing to contain such an allegation. Brown v. Travelers' Life & Accident Ins. Co., 21 App. Div. 42, 47 N. Y. Supp. 253; Voshefskey v. Hillside Coal and Iron Co., 21 App. Div. 168, 47 N. Y. Supp. 386.

In Bogert v. Otto Gas Engine Works, 28 App. Div. 463, 51 N. Y. Supp. 118, the Appellate Division of the Second Department held merely that the papers on which publication was granted were insufficient, for the reason that the complaint contained no allegation of residence, and the affidavit submitted on the application contained "no other jurisdictional facts" than those alleged in the complaint.

In Ubart v. Baltimore & Ohio Railroad Co., 117 App. Div. 831, 102 N. Y. Supp. 1000, the same court held that, in an action brought under section 1780 of the Code, an allegation in the complaint of the plaintiff's residence was unnecessary, and that a plea to the jurisdiction of the court for nonresidence must be made by the defendant.

In Herbert v. Montana Diamond Co., 81 App. Div. 212, 80 N. Y. Supp. 717, the learned Appellate Division of this department used this language:

"In Bogert v. Otto Gas Engine Works, the question arose upon an appeal from an order directing the service of a summons by publication. To procure such an order it is required (Code Civ. Proc. § 438 et seq.) that all of the jurisdictional facts necessary to maintain the action must be stated in order to confer authority upon the court to exercise its power, and, as the residence of the plaintiff did not appear upon such application, the court held that no jurisdiction was obtained to grant the order, and therefore reversed the same. These cases serve to illustrate the distinction which exists between those classes of cases where the statute or other provision of law makes it absolutely essential to the exercise of judicial power that certain facts be affirmatively established, and that class of cases where the objection may not be taken by demurrer, unless by affirmative averment the lack of jurisdiction is made to appear. Upon the face of this complaint it does not appear that the plaintiff is a nonresident. Consequently, it does not appear upon the face of the complaint that he has not legal capacity to sue, or that the court has not jurisdiction of the subject of the action."

Therefore it was not necessary for the plaintiffs to incorporate in their complaint an affirmative allegation of residence. That jurisdictional fact is made to appear in the affidavits on which the order of publication was based, and it is not controverted on this motion which is confined to the sufficiency of the papers leading to the order.

The next contention urged by the defendant is that the cause of action pleaded is not one of which the court will take cognizance.

The plaintiffs base their action substantially upon the alleged facts: That, in 1901, the mines and mining properties in question were held by the defendant Greene in trust for the benefit of the Cobre Company; deeds thereto having been deposited in escrow to be delivered to the Cobre Company at some future time upon the performance of certain acts on the part of the company. That at that time the properties were seized by Greene and others. That the Cananea Company was formed as a holding company, and the properties were transferred to it subject to the rights and equities of the Cobre Company. That at the time of this transfer there had been no breach on the part of the Cobre Company of any of the conditions of the agreement

upon which Greene held the property in trust for that company. That subsequently the Greene Consolidated Company was formed practically as a holding company of both the Cobre and the Cananea Companies. That the transfer of the mining properties in question to the Cananea Company was made with full knowledge on the part of that company and the Greene Consolidated Company of the rights of the Cobre Company therein and of the fact of Greene's trusteeship and of his trust relations as an officer of the Cobre Company and of the fact that he held title only for the benefit of the Cobre Company. That it was represented that the transfer to the Cananea Company was made for the best interests of the Cobre Company and in its behalf. That these mining properties conveyed by Greene to the Cananea Company constituted the sole property and asset of the Cobre Company, except about $28,000 now in litigation in the courts of this state. "That said mines and mining properties are of great present and prospective value, namely, of the value of upwards of $25,000,000. That the income and profits arising from said mines and mining properties already distributed as dividends among the stockholders of the defendants Cananea Consolidated Copper Company and the Greene Consolidated Copper Company to the date of filing this complaint amount to the sum of upwards of $4,000,000, the exact amount of which is unknown to this plaintiff, but of which he now asks recovery. That the said defendants Greene, Greene Consolidated Copper Company, and the Cananea Consolidated Copper Company are dissipating the said property and the proceeds thereof and have failed and refused to account to the plaintiff and other minority stockholders of the defendant Cobre Grande Copper Company similarly situated for any of the profits, benefits, income, and advantages arising and obtained by them from said mines and mining properties, but are diverting the said income, profits, and benefits and converting the same to their own use and benefit, to the great damage and injury of this plaintiff."

The complaint further alleges: That the defendants Greene Consolidated Company and Cananea Company have never at any time owned or controlled or worked any mines or mining properties which they have operated or worked at a profit, except those mines or mining properties described and in which the defendant Cobre Grande Copper Company owns the entire beneficial interest. That large profits, income, and benefits have been derived and obtained by the defendants Greene and Greene Consolidated Company from those mines and mining properties, all of which should come into the treasury of the Cobre Company. That the Greene Consolidated Company has distributed among its stockholders dividends amounting to upwards of $4,000,-000, all of which have been obtained and derived from the mines and mining properties of the Cobre Company. That the defendant Greene Consolidated Company, by reason of its ownership of a majority of the capital stock of the Cobre Company, has prevented all other shareholders of the Cobre Company from participating in any of the income, profits, and benefits arising or derived from the mines and mining properties referred to, and the defendants Greene and Greene Consolidated Company have taken and converted to their own use and benefit all the profits, income, and benefits which have arisen or have

been obtained from those mines and mining properties. That the defendant Greene has, at all times since its organization, been the president and managing head of the Greene Consolidated Company, and a majority of its directors have been selected and chosen bv the defendant Greene and his associates. That the directors and officers of the Cobre Company have, at all times since May, 1901, been the defendant Greene and his associates, or employés of the defendants Greene, Greene Consolidated Company, or Cananea Company, and no meeting of the stockholders of the Cobre Company has been called or held since January 1, 1901. That the defendants Greene and Greene Consolidated Company control a majority of the capital stock of the defendant Cobre Company and elect and control the directors and officers thereof and dictate their acts and the acts of the corporation for the purpose of carrying out a predetermined plan or scheme to deprive the other stockholders of the Cobre Company of all interest in its properties and of all interest in the income and benefits derived or arising therefrom. That the defendants Greene and Greene Consolidated Company have divided and taken to themselves the property and assets of the Cobre Company and the income and profits thereof, to the exclusion of the plaintiffs and all other minority stockholders. That the acts of the defendants Greene and Greene Consolidated Company are unconscionably inequitable, oppressive, fraudulent, and in breach of trust and were performed to deprive the plaintiffs and other minority stockholders similarly situated of their just share of the property, income, and benefits due them as stockholders of the defendant Cobre Company. That the defendant Greene and the officers and directors of the defendant Greene Consolidated Company and the Cananea Company are now acting, and have at all times since the organization of the Greene and Cananea Companies acted, fraudulently and in breach of their trust and have conspired to deprive the plaintiff and all other minority stockholders of the Cobre Company of their just and proper interests and proportion of the properties, assets, income, and profits of the said mines and mining properties of the Cobre Company and to which they are justly entitled as stockholders. That all the properties and assets of the Cobre Company have been taken charge of and are now in possession of and are being operated by the defendants Greene, Greene Consolidated Company, and Cananea Company, or have been distributed as dividends among the stockholders of the Greene Consolidated Company, or have been converted by the defendant Greene. And the plaintiffs charge: That the defendant Greene, Greene Consolidated Company, and the Cananea Company are, in fact, trustees holding said properties and assets of the Cobre Company in trust for it and as trustees for the minority stockholders; that the business of the Cobre Company is being carried on by the defendants Greene, Greene Consolidated Company, and the Cananea Company, without keeping any adequate record of the earnings which are obtained and derived from the properties belonging to the Cobre Company; and that the earnings and profits of the Cobre Company have been dissipated and expended.

The plaintiffs pray judgment decreeing that the Cananea Company holds the mining properties referred to in trust for the benefit of the

Cobre Company, and that the defendants Greene, Cananea, and Greene Consolidated Companies account to the Cobre Company for the income, profits, and benefits received from the use, occupation, working, and operation thereof, and restore to the Cobre Company the amount found to be due, and pay to the plaintiffs and other stockholders similarly situated their respective shares of such income, profits, and benefits. The action, while incidentally involving title to real proper outside of the state, is in reality brought, under section 1781 of the Code, to compel restoration to the Cobre Company of its corporate assets and payment to stockholders of their share of the profits based on the earnings of those assets.

It is apparent from the foregoing analysis of the complaint that a cause of action is stated of which our courts of equity will assume jurisdiction. If Greene or the Cananea Company or the Greene Consolidated Company have property or profits which in equity belong to the plaintiffs as stockholders of the Cobre Company, they may apply to our courts for that which belongs to them. Grant v. Cananea Consolidated Copper Co., 189 N. Y. 241, 82 N. E. 191. The fact that a determination of the controversy involves title to foreign real estate does not alter this conclusion. Hallenborg v. Greene, 66 App. Div. 590, 73 N. Y. Supp. 403; Ernst v. Rutherford & B. S. Gas Co., 38 App. Div. 388, 56 N. Y. Supp. 403; Chase v. Knickerbocker Phosphate Co., 32 App. Div. 400, 53 N. Y. Supp. 220.

In Hallenborg v. Greene, supra, the plaintiffs sued these same defendants to enjoin the consummation of an alleged unlawful scheme to deprive the Cobre Company of its property. An application for an injunction and a receiver was met by the objection that the court had not jurisdiction of the subject of the action. This objection was overruled, and the relief applied for granted. Upon appeal from the order of the Special Term, Mr. Justice Laughlin, writing for the learned Appellate Division of this department, said:

"The defendants Greene, the Cobre Company, the Cananea Company, and the Greene Company are all properly before the court. The trial court will therefore have jurisdiction of the parties, and may, we think, without infringing upon any rule of comity, or upon this rule forbidding interference with the internal affairs of a foreign corporation, try the issue as to this conspiracy and fraudulent agreement, under which it is proposed on the part of the appellants to divest the Cobre Company of all its property without consideration, and may, if the facts shown and circumstances then existing seem to warrant that course, perpetually enjoin the consummation of such fraudulent contract and transfers of the property of the Cobre Company, and require an accounting and compel the restoration of any of its property appropriated by the defendants, even though such decree will operate upon property beyond the jurisdiction of the court."

To the same effect are Code Civ. Proc. § 1780; Ives v. Smith (Sup.) 3 N. Y. Supp. 645; Id., 55 Hun, 46, 8 N. Y. Supp. 46; Ernst v. Rutherford & B. S. Gas Co., 38 App. Div. 388, 56 N. Y. Supp. 403; Chase v. Knickerbocker Phosphate Co., 32 App. Div. 400, 53 N. Y. Supp. 220; Prouty v. Mich. S. & N. I. R. R. Co., 1 Hun, 655; Babcock v. Schuylkill & L. V. R. Co., 56 Hun, 649, 9 N. Y. Supp. 845.

In Ernst v. Rutherford & B. S. Gas Co., supra, Mr. Justice Cullen, delivering the opinion of the court, said:

"The basis of an action for an accounting and restoration against offending officials of a corporation is the trust relation which such officials bear to the corporation and to its stockholders. This gives a court of equity jurisdiction of the subject-matter wherever it can obtain jurisdiction of the persons of the defendants, even though the subject-matter might be real estate lying without the state."

In Chase v. Knickerbocker Phosphate Co., supra, the principle stated by Chief Justice Marshall in Massie v. Watts, 6 Cranch (U. S.) 148, 3 L. Ed. 181, was quoted with approval, as follows:

"This court is of opinion that, in a case of fraud, of trust, or of contract, the jurisdiction of a court of chancery is sustainable where the person be found, although lands not within the jurisdiction of that court may be affected by the decree."

Æquitas agit in personam, and an equitable decree may be granted against all persons within the jurisdiction of the court for relief against fraud and compelling or restraining certain acts, even if the subject-matter incidentally affected is beyond the territorial boundary of the court's jurisdiction.

In Massie v. Watts, supra, Marshall, C. J., said:

"When the defendant in the action is liable to the plaintiff, either in consequence of contract, or as trustee, or as the holder of a legal title acquired by any species of mala fides practiced on the plaintiff, the principles of equity give a court jurisdiction wherever the person may be found; and the circumstances that a question of title may be involved in the inquiry and may even constitute the essential point on which the case depends does not seem sufficient to arrest jurisdiction."

It may be noted that in the case at bar the plaintiffs do not allege that the Cananea Company improperly holds the legal title to the mining properties, but that such title was transferred to it subject to the trust in favor of the Cobre Company. It is the breach of that trust which furnishes the foundation for the plaintiffs' action. All parties against whom relief is asked have appeared and answered, and the court has therefore personal jurisdiction over them. No relief is prayed against the Cobre Company, which is merely a nominal, though a necessary, party. It is the cestui que trust for whose benefit it sought to recover assets diverted through fraudulent and tortious acts of its trustees and others acting in conjunction with him. The case is one calling, incidentally, for the declaration of a constructive trust on the property in suit for the benefit of the Cobre Company.

In Pomeroy on Equity Jurisprudence, § 1084, we find the following:

"Wherever property, real or personal, which is already impressed with or subject to a trust of any kind, express or by operation of law, is conveyed or transferred by the trustee, not in the course of executing and carrying into effect the terms of an express trust, or devolves from a trustee to a third person, who is a mere volunteer, or who is a purchaser with actual or constructive notice of the trust, then the rule is universal that such heir, devisee, successor, or other voluntary transferee, or such purchaser with notice, acquires and holds the property subject to the same trust which before existed, and becomes himself a trustee for the original beneficiary. Equity impresses the trust upon the property in the hands of the transferee or purchaser, compels him to perform the trust if it be active, and to hold the property subject to the trust, and renders him liable to all the remedies which may be proper for enforcing the rights of the beneficiary. It is not necessary that such

transferee or purchaser should be guilty of positive fraud, or should actually intend a violation of the trust obligation. It is sufficient that he acquires property upon which a trust is in fact impressed, and that he is not a bona fide purchaser for a valuable consideration and without notice. This universal rule forms the protection and safeguard of the rights of beneficiaries in all kinds of trust. It enables them to follow trust property—lands, chattels, funds or securities, and even of money—as long as it can be identified, into the hands of all subsequent holders who are not in the position of bona fide purchasers for value and without notice. It furnishes all those distinctly equitable remedies which are so much more efficient in securing the beneficiary's rights than the mere pecuniary recoveries of the law."

In Devlin v. Roussel, 36 App. Div. 87, 55 N. Y. Supp. 386, where it was sought to hold the representative of a foreign trustee accountable for investing a fund in this state in prohibited securities, substituted service was permitted, and the court, by Mr. Justice Patterson, said:

"It is plain that such substituted service could not be made on a nonresident defendant, so as to bind him to a personal liability by judgment, and had that been the whole case the motion should have been granted. Von Hesse v. Mackaye, 55 Hun, 369, 8 N. Y. Supp. 894, affirmed 121 N. Y. 694, 24 N. E. 1099. The object of the present action, so far as Roussel is concerned, is to compel an accounting concerning a fund chargeable, as is claimed, against an estate committed to his hands by a court of New York, and the jurisdiction of the appropriate courts of this state extends to the settlement of his accounts and the charging of claims against the estate in his hands. The action, although in form in personam, as every purely equity suit must be, nevertheless relates to a fund within the jurisdiction of the Supreme Court of New York, and actually within this state, and is quasi in rem, if not in rem, and, the res being within the jurisdiction, there is something for a judgment settling rights to operate on. Ward v. Boyce, 152 N. Y. 196, 46 N. E. 180, 36 L. R. A. 549."

That language is applicable here. The purpose of this action is to reach assets belonging to the Cobre Company in the hands of the other defendants resident or doing business in this state. It therefore partakes of the nature of an action in rem, and the allegations of the complaint are sufficient to compel jurisdiction.

But the moving defendant maintains that, even though the complaint states a cause of action against the other defendants, the allegations thereof do not show a "sufficient cause of action" against it. The plaintiffs sue as stockholders on behalf of the minority interests of the defendant Cobre Company. They allege the refusal of that defendant to bring the action, and they are therefore required to make the company a party defendant. They also show that, after the formation of the Cananea and Greene Consolidated Companies, not only were the assets of the Cobre Company turned over to these companies, but a majority of the stock of the Cobre Company was converted into Greene Consolidated stock. When this had been accomplished, offers to exchange stock were withdrawn, and the plaintiff and minority stockholders were excluded from participation in any assets to which the Cobre Company was or became entitled. Furthermore, the complaint alleges that, upon the formation of the holding companies, the Cobre Company ceased to exist as an active corporation; all its business being carried on by the defendant Greene through the Greene Consolidated Company. It exists therefore merely as a de facto cor-

poration, and the minority stockholders are all that is left of the original corporation. The plaintiffs belong to this class and sue, not only for the benefit of the company, but to secure to themselves their proportionate share of any property in the hands of the other defendants belonging to the Cobre Company and to its stockholders. No relief is asked against the Cobre Company, and I have demonstrated that the title to real estate is only incidentally involved. The court has already obtained jurisdiction of the defendants charged with being accountable for assets in their possession, and the Cobre Company is made a party in order that any judgment may properly inure to its benefit. Section 439 of the Code is therefore amply satisfied by the allegations of the complaint.

The next point urged is that the order of publication is violative of the fourteenth amendment of the federal Constitution, which provides, among other things, that:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any citizen of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

There is nothing in the mere service of a summons that contravenes any provision of this amendment, or raises a federal question, though such a question might arise upon the attempted enforcement of a judgment; but in serving the summons the defendant is not interfered with either in person or property. The method of such service is regulated by the statute, which defines the procedure requisite to obtain jurisdiction over foreign corporations.

In York v. State of Texas, 137 U. S. 19, 11 Sup. Ct. 10, 34 L. Ed. 604, it was said that:

"The state has full power over remedies and procedure in its own courts, and can make any order it pleases in respect thereto, provided that substance of right is secured without unreasonable burden to parties litigant."

In that case the defendant had appeared for the purpose of objecting to the jurisdiction of the court. Such an appearance under a Texas statute was construed as general, and judgment was entered against the defendant. The constitutionality of the statute was raised on appeal, and the Supreme Court of the United States, by Mr. Justice Brewer, said:

"The fourteenth amendment is relied upon as invalidating such legislation. That forbids a state to 'deprive any person of life, liberty or property, without due process of law.' And the proposition is that the denial of a right to be heard before judgment simply as to the sufficiency of the service operates to deprive the defendant of liberty or property. But the mere entry of a judgment for money, which is void for want of proper service, touches neither. It is only when process is issued thereon or the judgment is sought to be enforced that liberty or property is in present danger. If at that time of immediate attack protection is afforded, the substantial guarantee of the amendment is preserved, and there is no just cause of complaint."

In Barnett v. Chicago & Lake Huron R. Co., 4 Hun, 114, we find this language:

"An attempt was made to show that. while the Legislature had power to authorize a suit against a foreign corporation in rem, it had none to authorize

one in personam; but no good reason for such distinction was stated, or has ever been brought to my knowledge. If the Legislature has power to authorize any suit, they may prescribe what kind and the mode or procedure in it. There is nothing constitutional or fundamental in the method of procedure in an action."

"Each state has the power," said Chief Justice Follett, writing for the court in Rigney v. Rigney, 127 N. Y. 408, 28 N. E. 405, 24 Am. St. Rep. 462, "to regulate the procedure of its courts."

In Mutual Life Ins. Co. v. Pinner, 43 N. J. Eq. 52, 10 Atl. 184, the court say:

"While it is a fundamental principle of every civilized code of laws that no person shall be deprived of his rights, either of person or property, by judicial sentence, without an opportunity of being heard in his defense, yet the method by which a defendant shall be notified of a suit instituted against him, so that the court may acquire jurisdiction over him—whether the notice shall be actual or constructive—is a subject over which the lawmaking power of each government has supreme control. Hess v. Cole, 23 N. J. Law, 116; Moulin v. Insurance Co., 24 N. J. Law, 222."

To the same general effect are Post v. Kirkpatrick, 53 N. J. Eq. 641, 33 Atl. 1059; Hart v. Sansonm, 110 U. S. 151, 3 Sup. Ct. 586, 28 L. Ed. 101; Clarke v. Boreel, 21 Hun, 594; and Parke v. Gay, 28 Misc. Rep. 329, 59 N. Y. Supp. 890.

In Goldey v. Morning News, 156 U. S. 518, 15 Sup. Ct. 559, 39 L. Ed. 517, relied on by the defendant, we find this significant statement:

"Whatever effect a constructive service may be allowed in the courts of the same government, it cannot be recognized as valid by the courts of any other government."

The question presented is therefore one of procedure, and constitutional rights are not involved. The plaintiff has fully complied with the provisions of the statute permitting substituted service by publication, and we are not now concerned with the operation or effect of any judgment which may be rendered in the action. Clarke v. Boreel, 21 Hun, 594; Von Hesse v. Mackaye, 55 Hun, 369, 8 N. Y. Supp. 894, affirmed on opinion below, 121 N. Y. 694, 24 N. E. 1099.

In Grant v. Cananea Consolidated Copper Co., 189 N. Y. 241, 82 N. E. 191, the Court of Appeals said:

"If the defendant Cananea Company is here to such an extent that we may acquire jurisdiction of it by the service of a summons, then our courts may determine as to the rights of the company in so far as it has property here over which the courts may acquire jurisdiction. If it has property or profits arising from the mining of ores in the hands of the Greene Consolidated corporation which in equity belongs to our own citizens, they may apply to the courts, either state or federal, to recover that which belongs to them, and such application is the due process of law which the Constitution recognizes and requires."

Furthermore, the rights of the defendant Cobre Company could neither be invaded or impaired by a result favorable to the plaintiffs. A judgment in their favor would inure to the defendant's benefit, and not to its disadvantage. Property would be restored to and not taken from it, and it would have enjoyed the full protection of our laws. It is difficult to conceive how the defendant can be injured by being

retained in the action, or in what manner the constitutional provision referred to is violated by obtaining jurisdiction of the defendant through the procedure adopted by the plaintiff.

The defendants Greene, Cananea Company, and Greene Consolidated Company, the only parties against whom relief is prayed, have been duly served and are subject to the jurisdiction of the court. The court has power to decree such an accounting by these defendants as will restore to the Cobre Company and to its stockholders any property or assets which may have been diverted. The Cobre Company is therefore beneficially interested in the outcome of the action. Furthermore, if, as alleged, all the property of the Cobre Company has been transferred to the Cananea Company, and the stock of the latter is held and controlled by Greene and the Greene Consolidated Company, and the business of the Cananea Company and therefore of the Cobre Company is conducted and managed at the office of the Greene Consolidated Company in this city, all of the defendants are within this state and subject to the jurisdiction of our courts. The Cobre Company is "here to such an extent that we may acquire jurisdiction of it by the service of a summons" in any manner authorized by statute. The facts presented may be unique, but the principle applicable is plain. Were the courts of this state to refuse to assume jurisdiction under the facts disclosed, not only would it be practically impossible for the plaintiffs or any other minority stockholders to obtain relief, but corporations would be permitted, by the formation of successive holding companies organized under the laws of different states, to defeat the rights of stockholders and to divert and dissipate corporate assets at will.

The cases cited by the defendant call for the application of no rule which would deny the plaintiffs' right, under the papers attacked on this motion, to serve the defendant Cobre Company by publication. The statute permitting such service (Code Civ. Proc. § 438), is clear and unambiguous. The papers on which the order was based answer all the requirements of section 439, and the order conforms to the provisions of section 440. If the allegations of the complaint are true, and they cannot be controverted on this motion, the Cobre Company is here and has property here, and therefore not only will the court be able to decree the ultimate rights of all the parties, but its judgment may be enforced against res actually within the jurisdiction.

In brief, the order of publication should be sustained for the following reasons: (1) The Cobre Company is in this state to an extent sufficient to enable the court to acquire jurisdiction; (2) it has property here in the shape of assets in the hands of the other defendants; (3) the action is quasi in rem; (4) the defendant served is but nominally a party, no relief being asked against it, and is beneficially interested in any results favorable to the plaintiffs; (5) the parties against whom relief is asked are before the court, and it has power to render an enforceable judgment.

It would serve no useful purpose to analyze the cases cited by the defendant. Suffice it to say that in none of them do I find the statement either of a rule or of a principle or proposition of law in con-

flict with the views I have expressed. Expositions of substantive law are inapplicable where a statute is to be construed in the light of particular facts and circumstances. Hence the authorities upon which the defendant relies are of no assistance in the determination of the questions presented on this motion.

The motion to vacate the order of publication must be denied, with $10 costs to the plaintiffs.

Motion denied, with $10 costs to plaintiffs.