TOWN OF HACKETTSTOWN, PLAINTIFF, v. THOMAS TOMAS
AND RONALD F. WICK, DEFENDANTS.

Warren County Court

Decided December 8, 1964.

*Mr. Albert B. Thorp,* attorney for plaintiff (*Mr. Albert B. Thorp,* on the brief).

*Messrs. Rothbard, Harris & Oxfeld,* attorneys for defendants (*Mr. Emil Oxfeld,* on the brief).

PAULIS, J. C. C.  Thomas Tomas and Ronald F. Wick, the defendants herein, were convicted in the Municipal Court of the Town of Hackettstown for violating the ordinance of said town relating to circular distribution, and were fined $15 and $5 costs, and have appealed to this court.

The section they allegedly violated was sec. 6–3.  This section provides as follows:

"6–3  Placing Circulars on or in Automobiles Prohibited

Circulars shall not be placed in automobiles parked along the streets in the Town nor shall they be attached thereto in any manner without the consent of the owner or occupant thereof and under no circum-

stances shall circulars be placed in or attached to an automobile or other conveyance which is unoccupied at the time of such delivery or distribution."

The charge against the defendants was that they did, on January 26, 1964, attach circulars to unoccupied motor vehicles parked on High Street in the Town of Hackettstown, and that these circulars were attached to the windshields of said motor vehicles without the consent or knowledge of the owners or occupants of said vehicles and thereby violated the afore-mentioned section 6-3 of the ordinance.

It appears that the defendants, prior to distributing the circulars, made an application for a license, pursuant to section 6-5 of the ordinance, paid the required fee, and were granted and obtained a license from the Town of Hackettstown.

Section 6-6 of said ordinance provides as follows:

"The purpose of the Article is to regulate and prevent the careless distribution of the articles enumerated in Section 6-1 hereof and thereby reduce the governmental costs of street cleaning in the Town."

The matter came before this court on a stipulation of facts and briefs. The record does not contain the nature of the circular distributed; however, upon a telephone call to Albert B. Thorp, Esquire, representing the plaintiff town, it was represented to the court that it was a lawful communication expressing a political philosophy, put out by the New Jersey Taxpayers' Association, to which the defendants herein subscribed.

Therefore, the basic issues confronting the court for determination are:

(1) Whether the purpose of Section 6.3 of the said ordinance bears any relationship to Section 6.6 of the said Ordinance, and whether both bear any reasonable relationship with the constitutional rights of free speech and free press, insofar as they deal with the distribution of leaflets dealing with a permitted political problem;

(2) Whether, from the factual circumstances in this case, the Ordinance violates any constitutional inhibitions and is a reasonable exercise of police power.

■ Fundamentally, we must always be concerned and alerted with the fact that the freedom of speech and freedom of the press are bulwarks of our democratic way of life, and courts must be ever vigilant to curb attempts to restrict their vital functions. *Hudson County News Co. v. Sills*, 41 *N. J.* 220, 233 (1963) ; *Lovell v. City of Griffin*, 303 *U. S.* 44, 452, 58 *S. Ct.* 666, 82 *L. Ed.* 949, 954 (1938).

■ It may be conceded that a municipality may, in certain circumstances, exercise its police power, but it must be stressed that a valid exercise of that power requires that there be a substantial relation between the regulation and the protection of the public health, safety, morals or general welfare.

In *Edgewater Borough v. Cox*, 123 *N. J. L.* 212 (*E. & A.* 1939), affirming 122 *N. J. L.* 291 (*Sup. Ct.* 1939), *certiorari* denied *Borough of Edgewater v. Bodene*, 309 *U. S.* 672, 60 *S. Ct.* 615, 84 *L. Ed.* 1017 (1940), Chief Justice Brogan said, 123 *N. J. L.*, at *page* 214:

"Much of what has been said in the Lovell case, *supra*, wherein the facts were quite similar, is applicable to the issue before us. The ordinance, in our judgment, is invalid on its face, interfering as it does with freedom of the press by regulations which restrict such freedom. The first amendment to our Federal Constitution provides, among other things, that the Congress shall make no law abridging freedom of speech or of the press. These rights are further safeguarded by the Fourteenth Amendment to the Federal Constitution which enjoins that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States. * * * If freedom of the press may not, under our fundamental law, be abridged, it follows that any ordinance or statute, accomplishing that purpose, as such, is invalid."

In *Coughlin v. Sullivan*, 100 *N. J. L.* 42 (*Sup. Ct.* 1924), the court stated:

"The enactment of reasonable ordinances regulating or prohibiting the distribution of circulars, pamphlets and other advertising matter,

in such manner as will ordinarily result in the littering of streets or other public places, constitutes a valid exercise of the police power under the "general welfare clause," and does not contravene constitutional provisions.

It is a matter of common knowledge, of which the court will take judicial notice, that certain circulars, pamphlets, etc., especially such as advertise commercial or business enterprises, when indiscriminately distributed to pedestrians, having no desire or use for them, are cast away so as to litter the streets. The natural and ordinary result of the distribution of such circulars being to litter the streets, an ordinance prohibiting their distribution is adapted to and reasonably necessary to prevent such evil. The principle is elucidated in *Harwood v. Trembley*, 97 *N. J. Law* 173.

The pamphlet here in question is of a different nature, containing, as it does, the views of a number of citizens as to the management or alleged mismanagement of municipal affairs, a matter in which they, as well as all other citizens, are vitally concerned. It cannot be presumed, in the absence of evidence, that the recipients of such pamphlets would throw them away. As to such pamphlets, containing matter of public interest, the ordinance operates unreasonably in this respect beyond the occasion of its enactment, and is unduly oppressive." (at *pages* 42-43)

At *page* 44, the court stated:

"The ordinance within reasonable limits is a proper one, and should be sustained, but no city ordinance, no matter how worthy its intendment, should be permitted in any way to curtail any of the fundamental rights of the citizen."

██ It is significant that section 6-1 of the ordinance speaks of the distribution or circulation of printed or other matter commonly known as handbills (hereinafter referred to as circulars). Reading this section with section 6-2, namely, to prevent the circulars from being strewn or littered on the premises or streets, and, further in light of Section 6-6, namely, the purpose of the article of this ordinance being to regulate and prevent the careless distribution of the articles enumerated in Section 6-1, and thereby reduce the governmental costs of street cleaning in the town, it is the court's opinion that the said section 6-1 of the ordinance defining a

handbill (thereafter referred to as a circular) referred only to materials and articles of commercial and business advertising matter and was never intended to prevent the lawful distribution and circulation of material containing an expression of a political nature. The circular in question in this case, being political in nature, did not come within the category or intendment of the operation of the ordinance.

In *Lovell v. Griffin,* 303 *U. S.* 444, 58 *S. Ct.* 666, 82 *L. Ed.* 949 (1937), Chief Justice Hughes, speaking for the court, said:

"Freedom of speech and freedom of the press, which are protected by the First Amendment from infringement by Congress, are among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by state action. * * *. It is also well settled that municipal ordinances adopted under state authority constitute state action and are within the prohibition of the amendment. * * *" (at 303 *U. S.* 450, at 58 *S. Ct.* 668)

Whatever the motives or purposes which induced the adoption of the subject ordinance, its character is such that if we were to accept plaintiff's contention that the circulars or handbills embrace circulars of a political nature or an expression of political philosophy, we would find that it strikes at the very foundation of the freedom of speech. Legislation of the type contained in the ordinance in question would restore the system of license and censorship in its baldest form and thereby prevent a fundamental right of free speech. *Lovell v. Griffin, supra,* at *pp.* 451–452, 58 *S. Ct.* 666.

In *Evans v. LePore,* 26 *N. J. Misc.* 215, 59 *A. 2d* 385 (*Sup. Ct.* 1948), the ordinance of Union City prohibited the canvassing, soliciting or distribution of circulars without a written permit from the chief of police, who could refuse the permit if the applicant was found by him not to be of good character or canvassing for a project not free from fraud, and required the applicant to give his full name, address, height, weight, place of birth and many other details and to be fingerprinted

and photographed. In that case it appeared that the circulars distributed had to do, directly or indirectly, with an effort to roll back prices (price controls) and solicited the distributee to communicate with his congressman in the effort to obtain or retain price control, and the assumption was that it meant control under federal legislative action.

Chief Justice Case said, at *pages* 216–217:

"* * * So the circular was within, as I understand it, the right of American citizens to endeavor to present their views to Congress. Unless there was some valid restraint upon the exercise of that privilege and right interference with the right is unlawful.

\*          \*          \*          \*          \*          \*          \*          \*

I am unable to distinguish this case on any of the facts before me from the federal decisions that have been referred to, *Schneider v. State (Town of Irvington)*, recorded I think, in 308 *U. S.*, page 147, 60 *S. Ct.* 146, 84 *L. Ed.* 155; *Lovell v. City of Griffin*, 303 *U. S.* 444, 58 *S. Ct.* 666, 82 *L. Ed.* 949; *McLean v. Mackay*, 124 *N. J. L., page* 91; 10 *A. 2d* 733; *Edgewater Borough v. Cox*, 123 *N. J. L.* 212; 8 *A. 2d* 375."

While reasonable restrictions may be imposed upon the distribution in the exercise of reasonable police power, it is open to question whether it would be reasonable to impose restrictive limitations, that is, permit circulars to be distributed in homes, or doorways, etc., but not in unoccupied vehicles. The distinction is sufficiently vague and obscure so as to present a constitutional question under the First, as related to the Fourteenth, Amendment to the *U. S. Constitution,* and *Article* I, *Par.* 6 of the *N. J. Constitution,* and thus to create a doubt as to whether the purpose and intent of the Ordinance was to do what plaintiff contends, namely, the prevention of littering the street.

The cases cited in plaintiff's brief are distinguishable from the present case, because they speak of handbills or advertising matter which do not embrace the nature of the circular distributed by the defendants.

It appears that the primary purpose of the subject ordinance was to prevent the littering of streets with commercial advertising. In that, I find it valid.

As applied to the defendants in the instant case, the ordinance constitutes an invasion of their fundamental rights. I am therefore of the opinion that the conviction should be set aside and the fine remitted.