HASBROUCK HEIGHTS HOSPITAL ASSOCIATION, A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT, v. THE BOROUGH OF HASBROUCK HEIGHTS, IN THE COUNTY OF BERGEN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND ALFRED BROOME, BUILDING INSPECTOR OF THE BOROUGH OF HASBROUCK HEIGHTS, AND ROBERT I. RAFFORD, CLERK OF SAID BOROUGH, DEFENDANTS-RESPONDENTS.

Argued April 26, 1954—Decided May 24, 1954.

Mr. *Dominick F. Pachella* argued the cause for the appellant (*Messrs. Pachella and Chary*, attorneys).

Mr. *Julius E. Kramer* argued the cause for the respondents (*Messrs. Chandless, Weller & Kramer*, attorneys).

The opinion of the court was delivered by

BURLING, J.   This appeal involves an action in lieu of prerogative writ dealing in general with the subject matter of municipal zoning and planning.   The Hasbrouck Heights Hospital Association, a New Jersey corporation (hereinafter referred to as the plaintiff), filed the complaint against the Borough of Hasbrouck Heights, a municipal corporation of the State of New Jersey, and certain officers thereof (hereinafter the municipality and the individual defendants are adverted to collectively as the defendants), in the Superior Court, Law Division, seeking relief including the setting aside of an amendatory ordinance barring the construction and use of any building as a hospital, in the residential zones of the municipality in which the plaintiff's land is situated. Judgment for the defendants was entered.   The plaintiff appealed to the Superior Court, Appellate Division, which affirmed.   *Hasbrouck Hts. Hospital Ass'n. v. Hasbrouck Hts.*, 27 *N. J. Super.* 476 (*App. Div.* 1953).   The plaintiff petitioned for certification, which we allowed, 14 *N. J.* 351 (1954).

It was stipulated at the trial that the plaintiff has owned since September 23, 1937 a tract of land on the easterly side of Terrace Avenue in the territorial limits of the defendant municipality, such tract of land being known as lot 9 in block 104 on the assessment map.   The evidence shows that this tract lies in part in a "C" residence zone, and in part in an "A" residence zone.   The larger portion, in connection with which the present litigation arose, lies in the "A" zone. It also appears from the evidence that the zoning ordinance

of May 9, 1929 permitted in residence zones "Philanthropic or eleemosynary uses or institutions other than correctional institutions or asylums for the insane"; that Ordinance No. 580, a supplemental ordinance approved December 29, 1947, prohibited, in residence zones, "nursing homes for compensation" and "Private sanitoriums and places for institutional care conducted for compensation."

The evidence shows that the plaintiff was incorporated under the act for the incorporation of associations not for pecuniary profit, on October 14, 1931. The hospital renders to the public treatment of emergency and non-emergency patients with exception of maternity, contagious disease and mental cases, and is classified as a general hospital. The original building was completed in 1945, and the municipality on December 28, 1945 issued a certificate of occupancy for the same for use as "Hasbrouck Heights Hospital."

On October 16, 1951 the plaintiff informed the municipal building inspector that it planned an extension to its existing hospital building. Although the plans were submitted no formal application for a building permit was made because the building inspector said he would not accept it.

The minutes of the municipal governing body show that at a regular meeting on November 7, 1951 a residents' petition was received seeking denial of the building permit sought by the plaintiff, and that this petition was referred "to the committee of the whole." At the same meeting an ordinance, No. 652, was submitted for first reading. This ordinance purported to amend the existing zoning ordinances to prohibit in residence zones "public or private hospitals, sanitariums and places for institutional care intended or designed to provide care or sleeping accommodations for more than 3 patients or inmates." No indication of consideration of the merits of this ordinance appears in the minutes of the meeting, but it was passed on first reading without discussion or dissenting vote. No reference of the ordinance to the municipal planning board was made (a municipal planning board being in existence in that municipality). On November 21, 1951 the governing body continued Ordinance No. 652

on public hearing until December 5, 1951, with no reference to the municipal planning board. The minutes of December 5, 1951 disclose that ordinance No. 652 was reported "ready for final action," but public hearing was ordered continued for two weeks to enable the plaintiff to consult with interested property owners. The minutes of the governing body's meeting on December 19, 1951 show only that Ordinance No. 652 was brought to the floor, its passage was protested by the plaintiff, public hearing was closed and the ordinance was adopted. It was approved by the mayor on the same day.

The looseness of the municipal proceedings is disclosed by the following facts:

The evidence demonstrates that during this time (namely October 16, 1951 through December 19, 1951) there was no communication of any nature to the borough clerk or to the planning board or any member thereof from the governing body with reference to consideration of any proposed ordinance by the planning board. The borough clerk testified, however, that he had "standing instructions" that "any ordinance affecting zoning shall be first approved by the Planning Board before they are adopted by the Mayor and Council." The borough clerk, who was also secretary of the planning board, further testified that he orally asked the chairman of the planning board to call a meeting. He testified that notices were sent out without specifying the purpose of the meeting or mentioning Ordinance No. 652, but no copy was made for the records of the planning board. The planning board met at 7:30 P. M. on December 19, 1951, pursuant to these notices. The borough clerk also was permitted to testify that neither the plaintiff nor the public was given notice of the planning board meeting. The minutes of the planning board disclose that Ordinance No. 652 was presented for consideration (although the record does not disclose the agency who transmitted the ordinance to the planning board) and, after discussion, it was approved, the meeting adjourning at 7:50 P. M. The minutes of the governing body show that its meeting, at which Ordinance No. 652 was passed at second and final reading, convened at 8:15 P. M. The minutes and

the record herein do not disclose the receipt of any information by the governing body pertinent to the planning board's approval of the ordinance.

On January 14, 1952 the plaintiff instituted the present action to set aside Ordinance No. 652. On July 7, 1952 the plaintiff filed with the defendant Building Inspector of the Borough of Hasbrouck Heights its formal application for a building permit for its planned hospital extension. The permit was denied by the building inspector. The plaintiff amended its complaint to seek additional relief requiring the issuance of the building permit by the building inspector to the plaintiff.

As hereinbefore stated judgment was entered in favor of the defendants, and this judgment was affirmed by the Superior Court, Appellate Division.

Several questions involved have been stated by the parties to this appeal. The defendants' contention that the plaintiff's proposed hospital extensions are barred by the municipal zoning ordinances existing prior to December 19, 1951, is without merit. Of the remaining questions, one is dispositive, namely whether Ordinance No. 652 was validly enacted. We are of the opinion that the adoption of Ordinance No. 652 was fatally defective and the ordinance should be set aside.

In this respect the controversy in the present matter is confined by the parties to the method of report of the planning board required by *R. S.* 40:55-35, as amended by *L.* 1948, *c.* 305, *sec.* 4, the pertinent portion of which reads as follows:

"Such regulations, limitations and restrictions may be amended, changed, modified, or repealed, and the boundaries of such districts may be changed, by ordinance, but no amendment or change shall become effective unless *the ordinance proposing such amendment or change shall first have been submitted to the planning board,* when such board exists, for approval, disapproval or suggestions, *and the planning board shall have a reasonable time, not less than thirty days, for consideration and report,* and in the case of an unfavorable report by the planning board such amendment shall not become effective except by a favorable vote of two-thirds of the governing body." (Emphasis supplied.)

The defendants contend that *R. S.* 40:55–35, as amended, *supra,* does not require the planning board to submit a written report to the municipal governing body. Compare *Struyk v. Samuel Braen's Sons,* 17 *N. J. Super.* 1, 9 (*App. Div.* 1951), affirmed *per curiam* 9 *N. J.* 294 (1952).

It is settled that in reaching the meaning of amendatory language the court must look to the prior law, the matters deemed to require correction thereunder and the remedy enacted. *Grogan v. De Sapio,* 11 *N. J.* 308, 323 (1953). A statute should not be construed to permit its purpose to be defeated by evasion, and in an investigation of the law in this respect the purpose of the statute must be examined and the practical results flowing from its enforcement. *Id., p.* 322.

*R. S.* 40:55–35 as it existed prior to the 1948 amendment required no reference to a planning board prior to amendment of a zoning ordinance by a municipal governing body. Nor was a requirement for such a reference contained in the 1930 planning act, incorporated in the *Revised Statutes* as *R. S.* 40:55–1 *et seq.*

However, the statute on municipal planning did require as a prerequisite to final approval by the governing body a report *in writing* by the planning board of its approval or disapproval (with reasons therefor) to the governing body in the event of proposed construction or authorization of any "street, square, park or public way, ground or open space, or public building or structure, or major public utility, whether publicly or privately owned." *R. S.* 40:55–7. A master plan and provisions for amendment thereof were detailed in *R. S.* 40:55–6, in terms unmistakably requiring a writing by the planning board. The master plan made and adopted by the planning board was permitted to be declared to be the official map of the municipality. *R. S.* 40:55–8. The official map could be changed or added to by the governing body of the municipality only after reference to the planning board and "receipt of the recommendation of the planning board," except where the planning board did not make its recommendation within 45 days after such reference.

*R. S.* 40:55–9. This statutory scheme was expressly declared to provide a means for the general purpose of "guiding and accomplishing a coordinated, adjusted and harmonious development of the municipality and its environs which will, in accordance with present and future needs, best promote health, safety, morals, order, convenience, prosperity and general welfare," "the promotion of the healthful and convenient distribution of population" and "promotion of good civic design and arrangement." *R. S.* 40:55–10. *Cf. Borough of Cresskill v. Borough of Dumont,* 15 *N. J.* 238 (1954); *Monmouth Lumber Co. v. Ocean Township,* 9 *N. J.* 64, 74 (1952).

The Zoning Act, however, in *R. S.* 40:55–35, prior to the 1948 amendment thereof, permitted amendments to municipal zoning ordinances without conformity to municipal planning. This seems to have been the statutory void requiring correction at the time of the enactment of *L.* 1948, *c.* 305, *supra,* insofar as it amended *R. S.* 40:55–35, *supra.* The provisions of the Planning Act of 1930 required action of the planning board to be in the form of a report, and in no instance authorized an oral communication. The general scheme required planning for the present and future in forms which could be effectuated only by writing. Insofar as planning for public use was concerned, approval by the planning board was expressly required to be in writing. *R. S.* 40:55–7, *supra.* Obviously in matters of zoning amendment the same careful study and procedure was intended to obtain in matters referred to the planning board for approval under *R. S.* 40:55–35, as amended by *L.* 1948, *c.* 305, *sec.* 4, *supra.* The salutary utility of a report in writing is obvious.

While there is a presumption of validity of municipal action, there is evidence in the present case clearly negating that presumption. The borough clerk's testimony and the minutes of the governing body and the planning board show that the ordinance was not submitted to the planning board, even informally, prior to first reading; that it was not officially referred by the governing body to the planning board prior to the second reading; and that the

purported approval by the planning board was not officially reported by it to the governing body either orally or in writing. No minutes of an order for transmission appear in the minutes of the planning board and no minutes of the governing body recite receipt of any report on this ordinance from the planning board. Under these circumstances the presumption of validity of the enactment of the ordinance is overcome. Compare *West Essex Bldg., &c., Assn. v. Caldwell*, 112 *N. J. L.* 466, 469–471 (*Sup. Ct.* 1934), affirmed *per curiam*, 113 *N. J. L.* 398 (*E. & A.* 1934). There was no semblance of a report from the planning board to the governing body in the present case. To "report" means to convey or disseminate information and desired information which is locked up in one's breast and not disclosed is not "reported." That which is not made known is not "reported." *Lightfoot .v. State*, 128 *Tex. Cr. R.* 281, 80 *S. W. 2d* 984, 985 (*Ct. Crim. App.* 1935).

The record indicates that the approval of Ordinance No. 652 was effected in haste and without full consideration of its merits in accord with the spirit of municipal planning. There is nothing in *R. S.* 40:55–35, as amended by *L.* 1948, *c.* 305, *sec.* 4, *supra*, from which it can be inferred that the Legislature has authorized precipitous action. Compare *Driscoll v. Burlington-Bristol Bridge Co.*, 8 *N. J.* 433, 478 (1952). The specific statutory language is otherwise, namely, that the planning board "shall have a reasonable time, not less than thirty days, for consideration and report." *R. S.* 40:55–35, as amended by *L.* 1948, *c.* 305, *sec.* 4, *supra*. An exercise of delegated power in a manner not within the contemplation of the Legislature must be restrained within proper bounds and be held void. *Grogan v. De Sapio, supra* (11 *N. J.*, at *pp.* 322–324). In passing it is observed that the Municipal Planning Act (1953), *L.* 1953, *c.* 433, *N. J. S. A.* 40:55–1.1 *et seq.*, is not specifically involved in the matters passed upon herein.

Inasmuch as the above conclusions are dispositive of the appeal the remaining questions involved are passed without discussion or determination.

For the reasons expressed in this opinion the judgment of the Superior Court, Appellate Division, is reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.