127 N.J. Super. 176 (1974)
316 A.2d 719
TOMS RIVER PUBLISHING COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
THE BOROUGH OF MANASQUAN, MONMOUTH COUNTY, NEW JERSEY; BOROUGH COUNCIL OF THE BOROUGH OF MANASQUAN, STUART R. HANCOCK, MAYOR OF THE BOROUGH OF MANASQUAN; THE POLICE DEPARTMENT OF THE BOROUGH OF MANASQUAN; WILLIAM A. MORTON, CHIEF OF POLICE OF THE BOROUGH OF MANASQUAN; AND SGT. LAVOKI OF THE POLICE DEPARTMENT OF THE BOROUGH OF MANASQUAN, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 6, 1974.
*178 Mr. Peter R. Strohm argued the cause for plaintiff (Messrs. Rothstein. Mandell & Strohm, P.C., attorneys).
Mr. John D. Wooley argued the cause for defendants, Borough of Manasquan, Council of the Borough of Manasquan. Stuart R. Hancock, Mayor of the Borough of Manasquan and William A. Morton, Chief of Police of the Borough of Manasquan.
*179 LANE, J.S.C.
In this action plaintiff seeks an injunction to restrain the enforcement of a provision of an anti-litter ordinance. The matter is before the court on final hearing.
Plaintiff publishes a public newspaper in Ocean and Monmouth Counties under the name of "The Reporter." It is distributed by plaintiff without charge to residents within the Borough of Manasquan and is hand delivered to the homes of all residents unless they have specifically requested that it not be delivered.
At its regular meeting on April 23, 1973, the governing body of Manasquan passed Ordinance 884, which reads in part:
No person shall deposit or deliver any paper, circular or printed material of any kind at any residence within the Borough of Manasquan, except upon the expressed request and order of the owner or occupant of any such residence.
Municipalities have no powers other than those delegated to them by the Legislature and by the State Constitution. Ringlieb v. Tp. of Parsippany-Troy Hills, 59 N.J. 348, 351 (1971); Wagner v. Newark, 24 N.J. 467, 474 (1957). N.J.S.A. 40:48-2, however, is a sweeping grant of legislative power to municipalities:
Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law.
Normally municipal ordinances are presumed to be valid. Courts are instructed that such ordinances must receive liberal construction. N.J. Const., Article IV, Section VII, ¶ 11. See Moyant v. Paramus, 30 N.J. 528, 534 (1959).
*180 In Johnson v. Township of Montville, 109 N.J. Super. 511 (App. Div. 1970), the court stated:
In passing upon the validity of the ordinance the role of the courts is tightly circumscribed. [Cit omit.] There is a presumption that the municipal governing body acted reasonably and that the resulting legislation is valid. [Cit omit.] We may not pass upon the wisdom of a particular ordinance, and debatable issues or questions of policy involved in its passage must be resolved in favor of the municipality. [Cit. omit.] We are not free to compare the views of the municipal governing body with our own and from this to determine what policy would be in the best interest of the community's residents. The wisdom of the course chosen by the governing body, as distinguished from its legality, is reviewable only at the polls. * * * [at 519]
However, the police power delegated by the state is not infinite and illimitable. Iannella v. Piscataway Township, 138 N.J. Eq. 598, 600 (Ch. 1946). An exercise of delegated power in a manner not within the contemplation of the Legislature must be restrained within proper bounds and be held void. Hasbrouck Heights Hosp. Ass'n. v. Bor. of Hasbrouck Heights, 15 N.J. 447, 455 (1954). Justice Heher summarized the appropriate restraints upon the exercise of the police power in Schmidt v. Board of Adjustment, Newark, 9 N.J. 405 (1952):
The exercise of the power is contained by the rule of reason. Arbitrary action is inadmissible. There must be a substantial connection between the means invoked and the public interest designed to be advanced. The inquiry is whether, considering the end in view, the measure "passes the bounds of reason and assumes the character of a merely arbitrary fiat." [Cit. omit.] It is requisite that there be a rational relation between the regulation and the service of the common welfare in an area within the reach of the police power, and that the means be reasonable and appropriate to that end. Restraints upon property cannot be unreasonable or unduly discriminatory. A police regulation that goes beyond the public need is not effective to curtail the basic rights of person or of private property made the subject of constitutional guaranties. But where the subject is comprehended in the police power of the state, debatable questions as to the reasonableness of the measure are not for judicial cognizance. * * * [at 416]
*181 See 7 McQuillin, Municipal Corporations, § 24.393 (3d ed. 1968 Rev. Vol.). Compare Dziatkiewicz v. Township of Maplewood, 115 N.J.L. 37, 42 (Sup. Ct. 1935) and Allen v. McGovern, 12 N.J. Misc. 12, 14, 169 A. 345 (Sup. Ct. 1933) with Evans v. LePore, 26 N.J. Misc. 215, 216-217, 59 A.2d 385 (Sup. Ct. 1948) and Hackettstown v. Tomas, 85 N.J. Super. 578 (Cty. Ct. 1964).
The municipal police power can be exercised only in those areas where regulation is needful for the common good, i.e., public health, safety, morals or general welfare, and then only by reasonable means substantially connected with the public interest designed to be advanced. Moyant v. Paramus, supra, 30 N.J. at 544; Mogelefsky v. Schoem, 90 N.J. Super. 49, 57 (App. Div. 1966), modified and remanded 50 N.J. 588 (1967).
The sweep of the police power is coextensive with the public need, which has been defined as that which is reasonably demanded by, but not necessarily indispensable to, the general welfare. A regulation that maintains the proper balance between collective and individual rights is ordinarily a legitimate exercise of the authority. Mansfield & Swett, Inc. v. West Orange, 120 N.J.L. 145, 153 (Sup. Ct. 1938).
The allegation is that the provision of Ordinance 884 is so broad in its terms as to curtail the right of freedom of the press guaranteed by the First Amendment of the United States Constitution and that it is therefore unconstitutional on its face. The normal rule of presumption of validity of municipal action does not apply where the municipal action impinges upon a citizen's freedom secured by the First Amendment.
* * * [A]ny attempt to restrict those liberties must be justified by clear public interest, threatened not doubtfully or remotely, but by clear and present danger. The rational connection between the remedy provided and the evil to be curbed, which in other contexts might support legislation against attack on due process grounds, will not suffice. [Thomas v. Collins, 323 U.S. 516, 530, 65 S.Ct. 315, 322, 89 L.Ed. 430 (1945)]
*182 The right to distribute, circulate or otherwise disseminate ideas and written materials has long been recognized to constitute an integral part of the right of free speech and press. Both rights are clearly fundamental ones protected by the First Amendment. Martin v. Struthers, 319 U.S. 141, 143, 63 S.Ct. 862, 87 L.Ed. 1313 (1943); Lovell v. Griffin, 303 U.S. 444, 450-452, 58 S.Ct. 666, 82 L.Ed. 949 (1938). The freedom of speech and press embraces the right to distribute literature and necessarily protects the right to receive it. Martin v. Struthers, supra, 319 U.S. at 143, 63 S.Ct. 862. Accord, Marsh v. Alabama, 326 U.S. 501, 505, 66 S.Ct. 276, 90 L.Ed. 265 (1946). The privilege may not be withdrawn even if it creates the minor nuisance for a community of cleaning litter from the streets, although the peace, good order and comfort of the community may require regulation of the time, place and manner of distribution. Martin v. Struthers, supra, 319 U.S. at 143, 63 S.Ct. 862.
An ordinance touching such fundamental protected rights must be narrowly drawn to define and punish specific conduct as constituting a clear and present danger to a substantial state interest. See Gooding v. Wilson, 405 U.S. 518, 522, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); Elfbrandt v. Russell, 384 U.S. 11, 18, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966); Sherbert v. Verner, 374 U.S. 398, 406-407, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); Cantwell v. Connecticut, 310 U.S. 296, 311, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). Legitimate legislative goals cannot be pursued by means that broadly stifle fundamental personal liberty when the end can be narrowly achieved. Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). Such intrusions into constitutionally protected areas must be founded on a compelling state interest which overrides private rights. In Martin v. Struthers, supra, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313, the court stated:
Freedom to distribute information to every citizen wherever he desires to receive it is so clearly vital to the preservation of a free society that, putting aside reasonable police and health regulations of *183 time and manner of distribution, it must be fully preserved. The dangers of distribution can so easily be controlled by traditional legal methods, leaving to each householder the full right to decide whether he will receive strangers as visitors, that stringent prohibition can serve no purpose but that forbidden by the Constitution, the naked restriction of the dissemination of ideas. [at 146-147, 63 S.Ct. at 865]
In Lovell v. Griffin, supra, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949, the Supreme Court had before it an ordinance which prohibited distribution of any literature of any kind without the permission of the City Manager. Mr. Chief Justice Hughes stated:
The ordinance in its broad sweep prohibits the distribution of "circulars, handbooks, advertising, or literature of any kind." It manifestly applies to pamphlets, magazines, and periodicals. * * * The ordinance is not limited to "literature" that is obscene or offensive to public morals or that advocates unlawful conduct. There is no suggestion that the pamphlet and magazine distributed in the instant case were of that character. The ordinance embraces "literature" in the widest sense.
The ordinance is comprehensive with respect to the method of distribution. It covers every sort of circulation "either by hand or otherwise." There is thus no restriction in its application with respect to time or place. It is not limited to ways which might be regarded as inconsistent with the maintenance of public order, or as involving disorderly conduct, the molestation of the inhabitants, or the misuse or littering of the streets. The ordinance prohibits the distribution of literature of any kind at any time, at any place, and in any manner without a permit from the city manager.
We think that the ordinance is invalid on its face. Whatever the motive which induced its adoption, its character is such that it strikes at the very foundation of the freedom of the press by subjecting it to license and censorship. The struggle for the freedom of the press was primarily directed against the power of the licensor. It was against that power that John Milton directed his assault by his "Appeal for the Liberty of Unlicensed Printing." And the liberty of the press became initially a right to publish "without a license what formerly could be published only with one." While this freedom from previous restraint upon publication cannot be regarded as exhausting the guaranty of liberty, the prevention of that restraint was a leading purpose in the adoption of the constitutional provision. [Cit. omit.] Legislation of the type of the ordinance in question would restore the system of license and censorship in its baldest form. [at 450-452, 58 S.Ct. at 669]
*184 In Martin v. Struthers, supra, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313, the ordinance involved read:
It is unlawful for any person distributing handbills, circulars or other advertisements to ring the door bell, sound the door knocker, or otherwise summon the inmate or inmates of any residence to the door for the purpose of receiving such handbills, circulars or other advertisements they or any person with them may be distributing.
Mr. Justice Black said:
We are faced in the instant case with the necessity of weighing the conflicting interests of the appellant in the civil rights she claims, as well as the right of the individual householder to determine whether he is willing to receive her message, against the interest of the community which by this ordinance offers to protect the interest of all of its citizens, whether particular citizens want that protection or not. The ordinance does not control anything but the distribution of literature, and in that respect it substitutes the judgment of the community for the judgment of the individual householder. It submits the distributor to criminal punishment for annoying the person on whom he calls, even though the recipient of the literature distributed is in fact glad to receive it. * * * [at 143-144, 63 S.Ct. at 863]
See also Schneider v. New Jersey, 308 U.S. 147, 160-165, 60 S.Ct. 146, 84 L.Ed. 155 (1939).
Defendants argue that an ordinance limiting distribution of advertising literature is not per se unconstitutional and that a balancing of personal and collective rights in this case should lead to the conclusion that the challenged ordinance is a reasonable exercise of the police power. They suggest that a balancing of fundamental rights is required and that the ordinance is designed to protect the right of privacy of individuals and must be weighed against the rights of freedom of speech and press of the public in general and of individual distributors.
Defendants rely on Breard v. Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951). There the court considered the ordinance before it in the context of the freedoms of speech and press and of burdens upon interstate commerce. The court concluded that the ordinance did not restrict fundamental *185 freedoms, in that the activities prevented were solicitations for orders and were essentially commercial. The court reviewed the holding in Martin v. Struthers, supra, 319 U.S. 414, 63 S.Ct. 862, 87 L.Ed. 1313, and distinguished it on the grounds that it involved free, non-commercial solicitation of a religious nature.
Here we are not dealing with solicitation of orders but merely distribution of news.
The validity of an anti-litter ordinance was at issue in Van Nuys Publishing Co. v. City of Thousand Oaks, 5 Cal.3d 817, 97 Cal. Rptr. 777, 489 P.2d 809 (Sup. Ct. 1971), cert. den. 405 U.S. 1042, 92 S.Ct. 1317, 31 L.Ed.2d 583 (1972). The ordinance provided in pertinent part:
Section 4. No person may throw, cast, distribute, scatter, deposit, pass out, give away, circulate or deliver any handbill, dodger, circular, newspaper, paper, booklet, poster, other printed matter or advertising literature of any kind in the yard or grounds of any house, building structure, on any porch, doorstep or vestibule, in any public hallway, or upon any vacant lot or other private property without having first obtained permission of the owner or of an adult resident or occupant thereof.
In declaring that part of the ordinance invalid and unconstitutional, the court stated:
In sum, though attempting to meet the very real problem of accumulation of litter, the present penal enactment goes substantially beyond what is necessary to achieve the city's anti-littering objective and, in so doing, treads directly on First Amendment rights. As the United States Supreme Court observed in Thornhill v. Alabama (1940) 310 U.S. 88, 97-98, 60 S.Ct. 736, 742, 84 L.Ed. 1093, there is a "pervasive threat inherent in [the] very existence * * * [of] a penal statute * * * which does not aim specifically at evils within the allowable area of state control but, on the contrary, sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech or of the press. The existence of such a statute * * * results in a continuous and pervasive restraint on all freedom of discussion that might reasonably be regarded as within its purview."
Thus, although in other contexts we would normally strive to construe the language of the ordinance narrowly to preserve its constitutionality, we believe that its "chilling effect" on sensitive First *186 Amendment rights forecloses its rehabilitation and compels its demise as unconstitutional on its face. The very presence of the ordinance on the books endangers the free distribution of ideas. The would-be lay pamphleteer does not turn to court decisions to find a judicial interpretation of the ordinance; he reads the ordinance. Its cold words of absolute prohibition may stay his publication. [97 Cal. Rptr. at 784, 489 P.2d at 816]
In People v. Walkenhorst, 59 Misc.2d 563, 299 N.Y.S.2d 912 (App. Term 1969), the challenged ordinance read in pertinent part that no person, with certain exceptions not quoted in the opinion, "shall enter upon any private residential property in [Rockville Center] for the purpose of distributing `any hand bill, pamphlet, tract, notice, or advertising matter * * * without the consent of the occupant of said premises previously given.'" The court found the ordinance constitutional but held that the distribution of an experimental college newspaper did not fall within the categories specified and was therefore not prohibited. In determining that the ordinance was constitutional, the court relied on People v. Bohnke, 287 N.Y. 154, 38 N.E.2d 478 (Ct. App. 1941), cert. den. 316 U.S. 667, 62 S.Ct. 1034, 86 L.Ed. 1743 (1942), in which the challenged ordinance also sought to limit distribution of the same essentially commercial material and in which the court specifically noted that the ordinance did not prohibit pamphleteering but only regulated it. In that case defendants were ordained ministers but also authorized representatives of the publishing house of their religion, who distributed religious pamphlets without the consent of private residents.
Holdings such as these would appear unduly to limit the protections of freedom of speech and press set forth by the Supreme Court in Martin, Lovell and Schneider, supra, restricting those protections to the distribution of blatantly non-commercial literature. However, even assuming that they correctly apply the law, they are to be distinguished from the present case, in which the challenged ordinance prohibits the distribution of any printed matter of any kind to any person without the person's prior consent and, thus, *187 give enormous weight to rights of privacy at the expense of the freedoms of speech and press. Whether this ordinance is designed to reduce littering, as its context would suggest, or to protect individual residents from disturbance by deliveries of such material, as defendants contend, its impact is far broader than is necessary to achieve those ends and is, in fact, so broad as to interfere with the freedoms of speech and press and of free communication which the First Amendment guarantees both to those who seek to circulate printed material and those who wish to receive it.
Plaintiff seeks an injunction to restrain the enforcement of the ordinance. A court of equity may exercise its power to enjoin the enforcement of invalid ordinances or the abuse of administrative powers granted by the Legislature. Cappa v. MacArthur, 133 N.J. Eq. 4, 6-7 (Ch. 1943). That portion of Ordinance 884 under attack is so overbroad as to be facially unconstitutional. An injunction will issue restraining the enforcement of the portion of Ordinance 884 quoted at the beginning of this opinion.