181 N.J. Super. 567 (1980)
438 A.2d 945
SUNRISE VILLAGE ASSOCIATES, PLAINTIFF,
v.
BOROUGH OF ROSELLE PARK, A BODY POLITIC, DEFENDANT.
Superior Court of New Jersey, Law Division Union County.
Decided May 20, 1980.
*570 Sheldon Zelig for plaintiff (Stier and Douglen, attorneys).
Joseph J. Triarsi for defendant (Pisano & Triarsi, attorneys).
FELLER, J.S.C. (retired and temporarily assigned on recall).
This is an action in lieu of prerogative writs. The facts are not in dispute and the matter was heard on plaintiff's motion and defendant's cross-motion for summary judgment.
The question presented is whether a municipality has the power to adopt an ordinance requiring the owner of an apartment complex to furnish uniformed security guard services during designated hours.
*571 Plaintiff Sunrise Village Associates is the owner of multifamily residential property which has in excess of 250 rental apartment units. Defendant Borough of Roselle Park is the municipal corporation wherein the apartment complex is located.
The ordinance in question requires the owner of any apartment complex within the borough, consisting of 250 or more units, to furnish uniformed security guard services upon its premises from the hours of 8 p.m. through 3 a.m., seven days a week. Each uniformed guard is required to "make a periodic patrol and inspection of the premises, and shall undertake all actions necessary to assure the personal safety, privacy and protection of property of the residents of each apartment complex and their guests." Failure to comply with the ordinance would result in the imposition of a $100 fine upon the apartment complex owner, with separate fines being levied for each day a violation exists.
According to the affidavit of Borough Clerk John Keenan, a petition was filed, signed by the residents of Sunrise Village and citizens owning property adjacent thereto, setting forth their concerns about the nature and extent of the complaints emanating from the apartment complex.
Also, according to the affidavit of Councilman Dennis Estis, the ordinance became necessary due to an overwhelming number of complaints which required police response, particularly at plaintiff's complex, which is a large multi-building garden apartment with common hallways and no substantial security presently existing.
Plaintiff alleges that the ordinance violates current state law in that the duty to provide police or uniformed security guard protection is the duty of government and not the landlord. It is further alleged that the area of a landlord's security obligation to a tenant is preempted by the Legislature; that the ordinance requires plaintiff to maintain its own private police force, which is an improper delegation of power, and that the ordinance violates the Equal Protection Clause. Finally, an improper abrogation of plaintiff's contractual right is argued.
*572 Plaintiff puts heavy reliance on Goldberg v. Newark Housing Auth., 38 N.J. 578 (1962), for the proposition that the ordinance is invalid in that the government must provide police protection. However, Goldberg held that in a civil suit alleging negligence the landlord had no duty to provide police protection.
The court in Goldberg did not say that local governments were prevented from passing ordinances creating a landlord's duty to provide security, nor did the court say that the landlord was prevented from providing such uniformed security, as this was the province of local government. In fact, the court stated that the owner of residential property could "furnish" police protection only if the municipality agreed to assign special policemen at the owner's expense. Id. at 582. Thus, the municipalities possessed the right to allow owners of residential property to furnish police protection at their own expense.
Similarly, the court in Braitman v. Overlook Terrace Corp., 68 N.J. 368 (1975), was also faced with a landlord's civil liability to a residential tenant for loss due to theft as a result of the landlord's failure to supply adequate locks on the door to the tenant's premises. The court took notice of a recent judicial trend toward expanding the scope of duty on the landlord's part with respect to tenant security, and found for plaintiff. Id. at 374.
Rather than setting limits on the landlord's duty and restraining municipalities from acting in the area of security and crime prevention, Braitman suggested that more measures and a greater duty may need to be imposed. The court stated:
In light of the growing threat which crime poses to the urban dweller and the increasing reliance which must be placed upon multiple dwellings to meet contemporary housing needs, it may indeed soon be necessary to impose upon the landlord the contractual duty of taking reasonable precautions to safeguard his tenants from crimes committed in his apartment buildings. [at 387.]
In Inganamort v. Fort Lee, 62 N.J. 521, 528 (1973), the court stated that "the Legislature may invest in local government the police power to devise measures tailored to the local scene." A problem may exist in some municipalities but be trivial or *573 nonexistent in others. The court recognized that even if the evil is of statewide concern, and certainly crime is, a different or more detailed local treatment may be warranted due to practical considerations to achieve the ultimate goal.
In the instant case Roselle Park has chosen a method of dealing with crime which it hopes serves as a deterrent to crime and an aid in the apprehension of criminals. It is defendant's experience that a large apartment complex is a great source of complaints requiring police response. At least that is the case regarding plaintiff's complex. Based on the problems existing in defendant municipality, defendant has chosen an ordinance tailored to meet its needs.
It is important to note that the municipality is not foregoing its governmental duty concerning police protection, nor is it transferring this duty to plaintiff. The security guards required are not empowered with the authority of municipal police, nor are they empowered to arrest and detain, carry weapons or otherwise intervene. Their presence, however, could serve to decrease the occurrence of police responses and increase law and order in the area by serving as a deterrent factor. A security may also result in quicker police response and increase the chances to apprehend those responsible for breaking the law.
N.J.S.A. 40:48-2 provides as follows:
Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law.
Thus, it is clear that a municipality, within the ambit of its police power, has the right to legislate for the benefit and protection of its residents and property owners. South Brunswick Tp. v. Covino, 142 N.J. Super. 493, 498 (App.Div. 1976). In addition, the ordinance is presumed to be valid and the burden is on the party challenging it to establish to the contrary. State v. *574 Holland, 132 N.J. Super. 17, 23 (App.Div. 1975). It is also presumed that a statute or ordinance will not be declared inoperative and unenforceable unless it is plainly in contravention of a constitutional mandate or provision. Although it may be open to a construction which would render it unconstitutional, it is the duty of a reviewing court to construe the ordinance or statute so as to render it constitutional if it is reasonably susceptible to such construction. State v. Profaci, 56 N.J. 346 (1970); see State v. Zito, 54 N.J. 206, 218 (1969); Camarco v. Orange, 61 N.J. 463 (1972); State v. Rosenfeld, 62 N.J. 594 (1973); Del Vecchio v. South Hackensack Tp., 49 N.J. Super. 44 (App.Div. 1958); State v. Holland, supra. The municipality in the instant case was within its power in passing the ordinance.
Plaintiff next claims that the Legislature has preempted the field in passing N.J.S.A. 55:13A-1 et seq., entitled "Hotel and Multiple Dwellings." It is argued that this law was intended by the Legislature to be comprehensive legislation on the subject of safe habitations for tenants. Plaintiff contends that pursuant to N.J.A.C. 5:10-19.6(c)2(v) of the regulations issued by the Commissioner of the Department of Community Affairs, a landlord can choose his or her own security system, be it a doorman, bell system or an approved alternative security and entry system.
However, N.J.S.A. 55:13A-7 says the Commissioner shall issue and promulgate such regulations as he may deem necessary to assure that any hotel or multiple dwelling will be constructed and maintained in such manner as to be consistent with and protect the health, safety and welfare of the occupants or of the public generally. It is obvious that the rules and regulations are concerned with the structural aspects of the dwellings. The statute is not intended to preempt the field of law enforcement in hotels or apartment complexes.
South Brunswick Tp., supra at 493, concerned an ordinance which required an owner to undertake various protective steps in connection with a nonoperating mine. While litigation was *575 pending, the Mine Safety Act, dealing with safety standards for mines and supervision and inspection by the Mine Safety Section of the Department of Labor and Industry, was amended. Among the amendments were provisions for protective measures in connection with abandoned mines.
The court found that the legislative amendments, as they related to abandoned mines, did not expressly or impliedly preempt the field so as to divest the municipality from exercising its police power to protect the public and surrounding properties. Id. at 497. Although the same subject matter was involved, the Mine Safety Act was concerned with the safety of the employees and the ordinance was concerned with protecting the general public. Because of the difference in goals and purposes, the court found no barrier to local legislation. Id.
In the instant case there likewise was no express or implied preemption of the field of security in multiple-residence dwellings. Similarly, there was a difference in goals and purposes in the statute and the ordinance. The statute and the Commissioner's rules and regulations seek to insure the public's safety in the construction and maintenance of the structures. The municipal ordinance seeks to deter criminal activity and reduce complaints in a known trouble spot, as well as to aid in the apprehension of those who do participate in criminal activity. Therefore, the Legislature has not preempted the field.
Plaintiff claims the ordinance violates the Equal Protection Clause in that it is based upon an arbitrary and capricious classification. Plaintiff's reasoning is that its premises was the only one affected by the ordinance, and thus feels that the ordinance was specifically aimed at it.
That the plaintiff's premises is the only one that was affected by the ordinance does not invalidate the ordinance. The ordinance pertains to plaintiff's premises and any and all other apartment complexes of 250 units or more which may come into existence. Little Falls Tp. v. Husni, 139 N.J. Super. 74, 80 (App.Div. 1976).
*576 Defendant could determine that only larger apartment complexes give rise to tenant unrest or increased criminal activity. Such a determination is not unreasonable, and the choice of 250 units is not arbitrary. This is particularly true in light of the heavy burden of demonstrating that a statute contravenes the Equal Protection Clause. N.J. Restaurant Assoc., Inc. v. Holderman, 24 N.J. 295, 300 (1957).
Any classification must also have a rational basis in relation to the specific objective of the legislation. The court in N.J. Restaurant Assoc., Inc. stated:
But the second proposition is qualified by limitations which compound the difficulties of one who assails the legislative decision. Thus, it is not enough to demonstrate that the legislative objective might be more fully achieved by another, more expansive classification, for the Legislature may recognize degrees of harm and hit the evil where it is most felt.
Thus, plaintiff has not satisfied its burden of showing the ordinance to be arbitrary, capricious or lacking a rational basis.
As for the abrogation of contract rights, the court in Inganamort v. Fort Lee, supra at 537, held that the right to contract is subject to the police power, and no less so when the police power is exerted at the municipal level.
Therefore, for the reasons set out it is the opinion of this court that the ordinance is valid and constitutional.
The motion for summary judgment made on behalf of plaintiff is hereby denied, and that made on behalf of defendant is hereby granted.