197 N.J. Super. 390 (1984)
484 A.2d 1319
SAMUEL BONITO T/A ELECTRIC CIRCUIT, PLAINTIFF,
v.
MAYOR AND COUNCIL OF THE TOWNSHIP OF BLOOMFIELD, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided August 3, 1984.
*393 Richard W. Vallario for plaintiff.
Vincent A. Pirone for defendants (John A. Bukowski, Jr., attorney).
VILLANUEVA, J.S.C.
This is an action in lieu of prerogative writs by the owner and operator of a video game arcade to compel the mayor and township council of the Township of Bloomfield to issue a license for an additional 20 video game machines and to have the court declare void and unconstitutional that part of the ordinance which requires certain video arcades to employ off-duty police officers as security guards during specified hours.
*394 The issues presented are:
(1) Was the township's denial of plaintiff's application to increase the number of video machines in his arcade arbitrary, capricious, unreasonable and unlawful?
(2) Is the ordinance requiring a security guard at certain video arcades constitutional and a proper exercise of the township's police power?
(3) May the township require security personnel at video arcades to be off-duty police officers?
The court holds that there was no factual basis for the township to deny plaintiff's application for additional video machines nor is there anything in the ordinance to limit the number of plaintiff's video games, except compliance with all township codes.
The court finds further that the requirement for security personnel in specified instances is a valid exercise of a municipality's police power, but to require only "off-duty police officers" to be used is arbitrary, capricious and unreasonable.
Plaintiff Samuel Bonito is the owner of a video arcade trading as "The Electric Circuit" at 619 Bloomfield Avenue, Bloomfield. He has operated this business for over two years. His license to operate 20 video games has been renewed for each calendar year. Said use is permitted by Bloomfield ordinance no. 1904 in a B-1 zone where plaintiff's arcade is located.
On July 22, 1983, plaintiff applied to the mayor and council for an additional 20 video games. On September 13, 1983, the township clerk notified the plaintiff that the mayor and council had denied his application to add an additional 20 video game machines, citing a large number of police incident reports allegedly attributable to plaintiff's arcade.
Plaintiff requested and was granted a hearing before the township council on December 5, 1983. This hearing was followed by a resolution on December 19, 1983 at which time the township council affirmed the denial of plaintiff's application. *395 The decision to deny plaintiff's application followed testimony by Bloomfield Chief of Police Anthony Castagno that there had been a series of incidents, mostly involving stolen bicycles, allegedly taken from the exterior of plaintiff's arcade. Specifically, there were 11 reports of stolen bicycles, one report of loitering and one report of a break and entry into plaintiff's business. Of the stolen bicycle incidents, eight occurred in 1982 and three in 1983. Chief Castagno admitted that there were no reports of any disturbances within plaintiff's business premises and that he had no information that other residences or businesses in the area of The Electric Circuit had complained to the township about any loitering problems at plaintiff's business.
Plaintiff also testified at the hearing that several other stores, namely, a pizzeria, stationery and car repair shop are also located at 619 Bloomfield Avenue, that there had never been an occasion for the police to come to his premises as a result of any disturbance involving his customers and, lastly, that there had never been any violations filed by the municipal authorities concerning the conduct of his business.
The township, after the hearing, passed a resolution denying the application for an additional 20 video games, stating that: "The Township Council finds that an extraordinary number of police incident reports have been filed relating to the subject premises, and, the applicant has failed to maintain good and safe conduct in and about the premises."
Plaintiff filed this action on January 30, 1984 to compel the mayor and council to issue a license to him for an additional 20 video games, contending that the denial of his application was arbitrary, unreasonable and unlawful, and that there was no evidence justifying the township council's finding that he had not maintained good and safe conduct at his premises.
Thereafter, an amendatory ordinance no. 14-101 was enacted by the township, which required that video arcades, licensed to operate 15 or more machines, must provide "an off-duty police officer" as a security guard during certain hours of operation.
*396 Plaintiff, by amended complaint, further claims that the new ordinance is arbitrary, capricious and unreasonable, and is an abuse of the police powers of the township. Therefore, plaintiff seeks to have this ordinance declared unconstitutional.

I. Denial of Plaintiff's Application for Additional Video Games
Plaintiff's application for an additional 20 video games at his video arcade was initially denied without a hearing by the mayor and township council, in a letter from the township clerk, which informed plaintiff that the denial was based on the "large number of police incident reports received from the location," referring to 619 Bloomfield Avenue, the address of the arcade.
This denial was affirmed by resolution of the mayor and council, premised on the "extraordinary number of police incident reports" filed relating to the premises and because plaintiff had "failed to maintain good and safe conduct in and about the premises." The resolution followed a hearing wherein Bloomfield Police Chief Castagno testified about 13 complaints allegedly concerning the premises: 11 stolen bicycle incidents, one loitering incident and one breaking and entering into the arcade; nine of the 13 incidents occurred between May 14, 1982 and September 15, 1982 and the other four took place in July and August 1983.
Chief Castagno stated that no reports were made concerning the alleged disturbances and no violations were ever filed against the arcade or its owner. In addition, the incidents involving stolen bicycles occurred outside 619 Bloomfield Avenue, which includes three other stores besides plaintiff's arcade.
Plaintiff also testified at the hearing that there had been no disturbances at the arcade, no fighting, and no municipal violations brought against the arcade.
The application was denied, allegedly due to the number of police incidents and plaintiff's conduct of his business.
*397 The township adopted ordinance no. 13-233 on December 14, 1981, to regulate the business of amusement devices. The denial of plaintiff's application by the mayor and council, was made pursuant to such regulatory power.
The number of machines is limited only by section XI of the ordinance which provides:
C. NUMBER OF MACHINES
The maximum number of mechanical amusement devices per establishment shall be two (2).
However, the applicant may in its application, set forth reasons why additional machines would not constitute a violation of the purpose and objective of this Ordinance. In no event, however, may an establishment exceed four (4) machines unless said establishment is located in the B-1 Zone as defined in the Zoning Ordinance of the Township of Bloomfield.
The number of machines permitted in an establishment in a B-1 Zone shall be restricted to the extent that the number of machines shall not violate any of the provisions of the Building Code, Fire Code, Health Code or other applicable codes of the Township of Bloomfield.
The governing bodies of municipalities are given the power to make, amend, repeal and enforce ordinances regarding a variety of subjects, including "theatres, cinema ... and all other places of public amusement." N.J.S.A. 40:52-1. This power to regulate places of public amusement is granted under the municipality's police power to protect the general health, welfare and safety of its citizens. Trombetta v. Atlantic City, 181 N.J. Super. 203, 226 (Law Div. 1981), aff'd 187 N.J. Super. 351 (App.Div. 1982); N.J.S.A. 40:48-2; Hutton Park Gardens v. West Orange Town Council, 68 N.J. 543, 564 (1975); Quick Check Food Stores v. Springfield Tp., 83 N.J. 438, 448 (1980).
Municipal police power, however, can be exercised only in those areas where regulation is needful for the common good, that is, public health, safety, morals or general welfare, and then only by reasonable means substantially connected with the public interest designed to be advanced. Mogelefsky v. Schoem, 90 N.J. Super. 49, 57 (App.Div. 1966), mod. on other grounds 50 N.J. 588 (1967).
*398 Thus, despite the fact that a municipal ordinance may be within the permissible objectives of the police power, all police power legislation is subject to constitutional limitation that it not be unreasonable, arbitrary or capricious, and that means selected via such legislation shall have real and substantial relation to the object sought to be attained. Gabe Collins Realty, Inc., v. City of Margate City, 112 N.J. Super. 341, 346-347 (App.Div. 1970); Toms River Publishing Co. v. Borough of Manasquan, 127 N.J. Super. 176 (Ch.Div. 1974). The sweep of the police power is coextensive with the public need, Id. at 181, and the exercise of such power must be reasonable and free from arbitrariness. Sabato v. Sabato, 135 N.J. Super. 158, 168 (Law Div. 1975); N.J. Good Humor, Inc. v. Bradley Beach, 124 N.J.L. 162 (E. & A. 1940).
It is a well-established principle of law that municipalities may regulate commercial coin-operated devices. Silco Auto. Vend. Co. v. Puma, 105 N.J. Super. 72 (Law Div. 1969); rev'd on other grounds, 108 N.J. Super. 427 (App.Div. 1970); Redeb Amusement, Inc., v. Tp. of Hillside, 191 N.J. Super. 84, 97 (Law Div. 1983). This power to regulate gives a municipality authority to impose reasonable restrictions and restraints upon the activity or matter regulated. Silco, 105 N.J. Super. at 83. However, the powers delegated to municipalities must be exercised reasonably and not arbitrarily. Ebler v. City of Newark, 54 N.J. 487, 491 (1969).
The township's denial of plaintiff's application was arbitrary and unreasonable and, thus, unlawful since there is no evidence supporting the December 19, 1983 resolution and the finding of plaintiff's failure to maintain good and safe conduct at his premises. Furthermore, this application is governed by section XI c. (number of machines) and not the revocation provision (section XI. A), since notice was never given of a proposed revocation.
The denial of plaintiff's application was based on Police Chief Castagno's testimony that there were 11 bicycle thefts from in *399 front of the premises, shared by plaintiff with three other stores, one loitering charge and one breaking and entering into the arcade. These 13 incidents occurred over a two-year period, and only three bicycle thefts occurred in 1983. These thefts occurred outside the arcade premises. Besides plaintiff's arcade, three stores are located at 619 Bloomfield Avenue, including a pizzeria. Thus, to conclude that the thefts occurred outside the arcade is purely speculative. To deny plaintiff's application due to a neighborhood problem with bicycle thefts is an improper basis for denial and an abuse of township police powers.
It was further stated by the township officials that a video arcade is a unique business, in that it attracts many youngsters whose actions and behavior patterns are unpredictable. The council claimed that if plaintiff's application were granted and additional video machines were installed, more problems would be created. They apparently assumed that an increase in the number of video games would mean an increase in the number of customers, which would increase the number of bicycles parked outside the video arcade, which would result in additional thefts of bicycles. Such suppositions are totally without any basis in fact. Not only have there been only three "problems" (bicycle thefts in the course of a year), but there is no evidence that an increase in games would lead to other problems, particularly since there are now requirements for a security guard. In its two years of operation, plaintiff has had no distrubances, no fights, and no municipal violations at the arcade. There is no reason to believe, at this point, that this situation will change, except for the better, because of the new requirement for a security guard. A mere possibility of additional incidents of bicycle thefts and a "potential for mischief" are insufficient bases for denial of the application.
There are alternate means to resolve the theft problem, if it be one, such as plaintiff's offer to install a rack or even chains for the bicycles. The township could easily resolve this situation by conditioning the grant of a video arcade license, renewal *400 or application for additional machines by requiring racks, chains, etc., for bicycles.
In addition, plaintiff's license to operate the arcade was renewed each year on December 31, the most recent renewal being December 31, 1982. This renewal followed the occurrence of eight alleged bicycle theft incidents, a loitering incident, and a break and entry. The proper time for township officials to cite incidents and problems, past and potential, would have been in December 1982, prior to license renewal, and not almost a year later, after only three bicycle thefts were reported, which were never even attributed to plaintiff's place of business.
There have been no disturbances at the arcade and no municipal violations in two years. Only three bicycle thefts were reported in 1983 at or near plaintiff's premises. The transcript shows by "clear and convincing evidence" that plaintiff has maintained good and safe conduct at his premises.
More importantly, the very ordinance purporting to limit the number of video games in plaintiff's zone does so only "to the extent that the number of machines shall not violate any of the provisions of the Building Code, Fire Code, Health Code or other applicable codes of the Township of Bloomfield."
No such violations have ever been alleged, much less, proved.
There is a total absence of facts to support the township's denial of plaintiff's application due to the number of incidents and the conduct of the business by plaintiff. The denial, therefore, was arbitrary and unreasonable and can not stand. Ebler v. City of Newark, supra. Thus, plaintiff's application for an additional 20 video machines is granted.
The ordinance regulating video arcades provides certain criteria to be followed in determining whether to issue or renew a license for a video arcade. The section dealing with "revocation of license" permits revocation if there is a violation involving: "Failure to maintain good and safe conduct on the premises." There is no evidence that there was any such failure by this *401 applicant. The conclusion that plaintiff did not maintain good and safe conduct, therefore, is without any support in the record. Furthermore, as indicated earlier, no notice of revocation was ever given to plaintiff.

II. Validity of Ordinance Requiring Certain Video Arcades To Employ A Security Guard.
An ordinance is presumed to be constitutional and valid until otherwise declared by the court. Hasbrouck Hts. Hosp. Ass'n v. Hasbrouck Hts. Boro, 15 N.J. 447 (1954); Moyant v. Paramus Boro., 30 N.J. 528, 534 (1959); Redeb Amusement, Inc. v. Tp. of Hillside, supra. In fact, there must be compelling evidence to overcome the presumption of validity that attaches to a municipal ordinance. Clifton v. Weber, 84 N.J. Super. 333, 339 (App.Div. 1964), aff'd 44 N.J. 266 (1965). It is the challenger who has the burden of proof to persuade the court that an ordinance is invalid. Hutton Park Gardens v. West Orange Town Counci, supra, 68 N.J., at 565.
A municipality may enact ordinances under its police power. Trombetta v. Mayor and Com'rs of City of Atlantic City, supra, 181 N.J. Super., at 226. The police power may be exercised only in those areas where regulation is needful for the common good and then, only by reasonable means substantially connected with the public interest designed to be advanced. Toms River Publishing Co. v. Borough of Manasquan, supra, 127 N.J. Super., at 181. In other words, there must be a substantial connection between the means invoked and the public interest to be advanced by an ordinance. Fasino v. Mayor and Bor. Coun. Montvale, 122 N.J. Super. 304, 306-307 (Law Div. 1973), aff'd 129 N.J. Super. 461 (App.Div. 1973). Such means must be reasonably necessary for accomplishing the purpose and not unduly oppressive to individuals. Ibid.
Legislation which is unnecessary, overbroad, unreasonable or arbitrary, having no real and substantial relationship to legitimate goals in promoting the public good is unconstitutional. *402 Quick Chek Food Stores v. Springfield Tp., supra, 83 N.J., at 449; State v. Baker, 81 N.J. 99 (1979).
Bloomfield Township ordinance no. 14-101 states:
Sec. XI, Section 2
F. OFF-DUTY POLICE SUPERVISION  All premises licensed to permit 15 or more machines are required to provide an off-duty Police Officer to be on duty when open for business during the hours and on days as follows:
1. When Bloomfield Junior High Schools and the Senior High School are in session:
Fridays from 7 p.m. to closing.
Saturdays from 1:00 p.m. to closing.
Sundays from 7:00 p.m. to closing.
2. When Bloomfield Junior High Schools and the Senior High School are not in session:
Monday through Saturday from 1:00 p.m. to closing.
Sundays from 7:00 p.m. to closing.
Clearly, the purpose of the ordinance and this section in particular is to provide for the safety and welfare of the patrons at video arcades. The township apparently believes that video arcades, in attracting many youths, may encourage loitering, disturbances, or other problems, all of which may be deterred by requiring "supervision." The township's view that there is a direct relationship between the size of the establishment, i.e., the number of machines, appears to have some rational basis.
Courts have upheld a town's requirement that a uniformed guard be in attendance at a service station, that a laundromat must have a security guard on its premises, and that an owner of an apartment complex can be required to have a security guard make periodic patrols and inspections of such complex to assure the personal safety, privacy and protection of its residents. Hudson Circle Servicenter, Inc., v. Kearny, 70 N.J. 289, 305 (1976); Township of Little Falls v. Husni, 139 N.J. Super. 74 (App.Div. 1976); and Sunrise Village Associates v. Roselle Park, 181 N.J. Super. 567 (Law Div. 1980), aff'd 181 N.J. Super. 565 (App.Div. 1981), respectively.
*403 While the facts presented at the December 5, 1983 hearing indicated that there were no disturbances within The Electric Circuit, it is reasonable for the township, in the interest of arcade patrons, most of whom may be township residents, to assure their safety and protection through the presence of an attendant. The ordinance requiring employment of an attendant is a reasonable means substantially connected with the public interest, the protection of arcade patrons, designed to be advanced by such ordinance. Toms River Publishing Co. v. Borough of Manasquan, supra, 127 N.J. Super., at 181. The fact that a court might disagree is of no consequence.
Plaintiff offered no evidence to overcome the presumption of validity that attaches to the ordinance, so far as its general purpose is concerned.
Merely because an ordinance is burdensome or distasteful to some individuals will not render it arbitrary or unreasonable per se. Town of Nutley v. Forney, 116 N.J. Super. 567 (Essex Cty.Ct. 1971). Thus, the requirement that an attendant be employed by video arcades at especially busy times of operation is a reasonable one, and directly related to promoting the public good  the welfare of video arcade patrons. Therefore, an ordinance is valid insofar as it requires large video arcades to employ a "supervisor" on their premises at certain times.

III. Validity of Township Requirement that Off-Duty Police Officers Serve as Security Guards.
As previously stated, the provision in an ordinance requiring certain video arcades to employ a supervisor on certain days and during certain hours is a reasonable one. However, where courts have upheld municipal requirements that a service station, laundromat and apartment complex employ security guards, they made no mention of whether such security personnel were or should be or must be off-duty police officers. Hudson Circle Servicenter, Inc. v. Kearny, supra; *404 Township of Little Falls v. Husni, supra; Sunrise Village Associates v. Roselle Park, supra.
The presence of a uniformed guard, as opposed to one in plainclothes, may instill authority and deter criminal conduct and disturbances. However, a uniformed guard could be a teacher, the owner, a private security officer employed by a private detective company or a constable. Why is it necessary for a security guard at a video arcade to wear a uniform when the township apparently does not require one at any other place, such as at a theatre, ice cream parlor, skating rink, bowling alley or other sporting events? Even if a uniformed guard would be more effective as a deterrent to disturbances at video arcades, is it necessary that such a guard be an off-duty police officer when any uniformed guard would serve that purpose?
Why the township officials believe that there is a need for existing "off-duty police officers" to be the only persons to act as security guards is beyond comprehension. First of all, is there an evil that must be policed? Secondly, are off-duty police, rookie or otherwise, more competent to act as security guards than, say, Wells Fargo guards, Pinkerton guards, Wackenhut guards, constables, corrections officers, sheriff's officers or even retired policemen?
Just as important, why is it necessary for a security guard at a video arcade to be armed when there is no evidence to justify it.
The ordinance, therefore, in requiring an off-duty police officer to serve as a security guard is unreasonable as overly restrictive, as anyone trained in security should satisfy the township's desire to ensure the safety of video arcade patrons and the public. While there attaches to an ordinance enacted under the police power a presumption of validity, such presumption is overcome if the evidence clearly establishes its unreasonableness. Livingston Tp. v. Marchev, 85 N.J. Super. 428 (App.Div. 1964). The burden of proof to establish such *405 unreasonableness rests on the party seeking to overturn the ordinance. Quick Chek Food Stores v. Springfield Tp., supra. While private business may be regulated for the common good and welfare, it is equally clear that the particular regulation must bear a substantial relation to the public health, safety or welfare. Fasino v. Mayor & Bor. Coun. Montvale, supra. While the ordinance is reasonable in requiring employment of a security guard at certain arcades, it is unreasonable to require off-duty police officers as such guards during their off-duty hours.
To limit security personnel only to off-duty police officers is so restrictive as to lack any reasonableness or relationship to the problem sought to be resolved by the township.
By requiring off-duty police officers as security guards, the township is also creating, intentionally or unintentionally, a private market for the services of a small, close-knit group  local police officers. This has the effect of eliminating any choice by the arcades' owners as to the type of attendants they wish to hire. It also creates a financial burden for them because off-duty police officers, while acting as security guards, obviously command a higher pay than do other types of attendants or security guards.
One could reasonably believe that the imposition of such an onerous condition is designed to discourage large arcades rather than to regulate a problem, which has been inflated to such magnitude to make such arcades armed camps.
There are no facts in the record to justify such a limitation to off-duty police officers; there is no history of violence or any kind of disturbances at plaintiff's premises where the services of a police officer would be required. While an attendant may be helpful in preventing loitering, truancy, in deterring bicycle thefts and in crowd control, the presence of a police officer is a totally unnecessary burden on a video arcade owner.
If the purpose of a supervisor is as indicated in the preamble (i.e., to prevent gambling, loitering and truancy) any responsible *406 adult should be capable of supervising the activities which obviously take place within a relatively small area. In addition, there has been no evidence whatsoever submitted that there is any need for the supervisor to be armed with a gun.
For the foregoing reasons, Bloomfield ordinance no. 14-101 is unreasonable as to the requirement that only off-duty police officers serve as security guards, and this section of the ordinance (section XI, section 2 F in its entirety), is stricken from the ordinance as invalid and unlawful and of no effect. The remainder of ordinance no. 14-101 will remain in effect, because of the separability provision.